**Kent MIGNOCCHI, Plaintiff,**

v.

**MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., James M. Donaghy and Ehab Gayed, Defendants.**

**No. 88 Civ. 4739 (MBM).**

United States District Court, S.D. New York.

Feb. 22, 1989.

As Amended March 15, 1989.

Lloyd D. Feld, Armonk, N.Y., for plaintiff.

Benedict L. Sliney, Cursio and Sliney, Mineola, N.Y., for defendants.

## OPINION AND ORDER

MUKASEY, District Judge.

Defendants Merrill Lynch, Pierce, Fenner & Smith, Inc. (Merrill Lynch), James M. Donaghy, and Ehab Gayed (collectively, defendants), move to stay plaintiff Kent Mignocchi's suit against them and compel arbitration. Mignocchi opposes defendants' motion to the extent that it seeks arbitration of his securities law claims, and he also moves to preclude any collateral estoppel effect that the arbitration may have. For the reasons given below, defendants' motion to stay these proceedings and compel arbitration is granted in part and denied in part, and Mignocchi's motion to preclude the collateral estoppel effect of the impending arbitration proceeding is denied.

Mignocchi has two accounts at Merrill Lynch. The agreements opening these accounts both contain arbitration clauses that are identical in all relevant respects. Mignocchi alleges that after both of these accounts were opened, Merrill Lynch employees Donaghy and Gayed offered to manage Mignocchi's portfolio in exchange for a commission and a portion of the profits. Mignocchi alleges that in the first two months that Donaghy and Gayed managed his investments, they charged excessive commissions and presided over a loss of 67% of the account's value. This suit followed on July 8, 1988.

Mignocchi seeks legal and equitable relief, alleging violations of §§ 12(1) and 12(2) of the Securities Act of 1933, as amended (the '33 Act), 15 U.S.C. § 77*l*(1) & (2) (1982); § 10(b) of the Securities Exchange Act of 1934 (the '34 Act), and Rule 10b–5 promulgated thereunder; 15 U.S.C. § 78j(b) (1982), and 17 C.F.R. § 240.10b–5 (1987); the Racketeer Influenced and Corrupt Organizations Act, as amended (RICO), 18 U.S.C. §§ 1961 *et seq.* (1982); and New York common-law fraud. In response, defendants seek to stay this suit and compel arbitration of its claims, pursuant to §§ 3 and 4 of the Federal Arbitration Act. 9 U.S.C. §§ 3 & 4 (1982). Mignocchi agrees to arbitrate his RICO and New York common-law claims, but still contests defendants' motion to compel arbitration of his '33 and '34 Act claims. Mignocchi also seeks to preclude the collateral estoppel effect of any arbitration decision.

The arbitration clause contained in the two agreements Mignocchi signed does not require him to submit his '33 or '34 Act claims to arbitration. As with any motion to compel arbitration, the initial task is to determine the scope of the arbitration clause. *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 626, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444 (1985). Under federal law, the substantive law governing agreements to arbitrate, the contract is interpreted according to "generally accepted principles of contract law." *Genesco, Inc. v. T. Kakiuchi & Co., Ltd.,* 815 F.2d 840, 845 (2d Cir.1987). However, in determining what the parties have agreed to arbitrate, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). These principles will be applied to the arbitration provision in both of Mignocchi's contracts with Merrill Lynch. That clause reads in relevant part:

> Except to the extent that controversies involving claims arising under the Federal securities laws may be litigated, I agree that any controversy arising out of your business or this Agreement shall be submitted to arbitration....

Defendants argue that the language of the arbitration clause is ambiguous. They assert that the clause may require arbitration of securities law claims, or it may not. Defendants then argue that when all doubts about the clause's scope are resolved in favor of arbitration, the clause requires Mignocchi to arbitrate his securities law claims. Accordingly, they conclude that unless Mignocchi can show that Congress wanted claims under the '33 or '34 Acts heard only in federal court, Mignocchi's claims must go to arbitration. *Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, ——, 107 S.Ct. 2332, 2337, 96 L.Ed.2d 185 (1987).

Alternatively, defendants produce internal Merrill Lynch memoranda indicating that the firm wrote the arbitration clause in order to follow precisely the contours of federal law, which at the time seemed to require that all '33 and '34 Act claims be heard in federal court. *E.g. Wilko v. Swan*, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953) ('33 Act claims must be heard in federal court); *McMahon v. Shearson/American Express, Inc.*, 788 F.2d 94 (2d Cir.1986) (claims under § 10(b) of the '34 Act are not arbitrable), *rev'd*, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987); 17 C.F.R. § 240.15c2–2 (1987) (brokers must tell customers that '33 and '34 Act claims must be heard in federal court), *rescinded, Rescission of Rule Governing Predispute Arbitration Clauses in Broker–Dealer Customer Agreements*, Securities Exchange Act of 1934 Release No. 25,034, 52 Fed.Reg. 39,216 (Oct. 21, 1987). Defendants assert that the clause was intended to allow customers to avoid arbitration only on those securities law claims that had to be litigated. Defendants therefore conclude that because the law has changed since the clause was written, and now allows arbitration of claims under the '34 Act, and soon may allow arbitration of claims under the '33 Act, the clause should be read to require arbitration of '33 and '34 Act claims. *McMahon*, 482 U.S. at ——, 107 S.Ct. at 2343 (claims under § 10(b) of the '34 Act are arbitrable); *Rodriguez De Quijas v. Shearson/Lehman Bros., Inc.*, 845 F.2d 1296 (5th Cir.1988) (claims under § 12(2) of the '33 Act are arbitrable), *cert. granted*, —— U.S. ——, 109 S.Ct. 389, 102 L.Ed.2d 379 (1989) (two questions presented: Are claims under § 12(2) of the '33 Act arbitrable?; and if so, is this holding to be applied retroactively?).

Both of defendants' arguments are without merit. With regard to their first argument, the contract provides "[e]xcept to the extent that claims arising under the federal securities law may be litigated," disputes must be sent to arbitration. The word that carries most of this clause's meaning is "may." If the word "may" were open to multiple interpretations, one of which was "must," then the clause

might be ambiguous. However, defendants offer no credible explanation for why "may" in this sentence should be read as "must," and the dictionary offers none as well. *Webster's 3d New Int'l Dictionary (Unabridged)*, 1396 col. 2 (1986). Moreover, if defendants believe that the word "may" is used to convey ability or permission to act, then it is clear that the clause specifically exempts from mandatory arbitration all claims capable of being brought under the federal securities laws, or all securities law claims that the law permits to be brought in federal court. Therefore the arbitration clause "expressly ... reserve[s to the customer] a right to litigate claims in federal court." *Finkle and Ross v. A.G. Becker Paribas, Inc.*, 622 F.Supp. 1505, 1511 (S.D.N.Y.1985); *see Leicht v. Bateman Eichler, Hill Richards, Inc.*, 848 F.2d 130, 132–33 (9th Cir.1988); *Brick v. J.C. Bradford & Co., Inc.*, 677 F.Supp. 1251, 1254–56 (D.D.C.1987). Accordingly, there is no foundation to defendants' argument that the clause requires Mignocchi to arbitrate his claims under the '33 and '34 Acts.

Defendants' second argument is also unconvincing. Assuming for the sake of argument that defendants' evidence is not barred by the parol evidence rule, it is still insufficient to compel arbitration. Many years ago, Judge Learned Hand wrote that secret intentions of a contracting party, even if attested to by 20 bishops, are not incorporated into a contract unless the intention is manifest in the writing or course of dealing between the parties. *Hotchkiss v. National City Bank of N.Y.*, 200 F. 287, 293 (S.D.N.Y.1911), *aff'd sub nom. Ernst v. Mechanics' & Metals Nat'l Bank of City of N.Y.*, 201 F. 664 (2d Cir.1912), *aff'd sub nom. National City Bank of N.Y. v. Hotchkiss*, 231 U.S. 50, 34 S.Ct. 20, 58 L.Ed. 115 (1913). The contract appears to exempt all securities law claims from mandatory arbitration. Moreover, there is no indication that Merrill Lynch communicated its intentions either through the clause itself, through another clause of the contract, or through a course of dealing with Mignocchi. *Creative Secs. Corp. v. Bear*

*Stearns & Co.*, 671 F.Supp. 961, 965 (S.D. N.Y.1987) (the parties' intentions and the context are important issues in interpreting arbitration provisions), *aff'd per curiam*, 847 F.2d 834 (2d Cir.1988). Therefore, defendants second argument in favor of arbitration is also unavailing. *Church v. Gruntal & Co., Inc.*, 698 F.Supp. 465, 468–69 (S.D.N.Y.1988) (where a customer is not told that the arbitration provision was intended to comply with Rule 15c2–2, rescission of the Rule does not broaden an arbitration clause's scope to include '34 Act claims); *see Shotto v. Laub*, 632 F.Supp 516, 519–20 (D.Md.1986) (where the arbitration clause clearly spells out that as the law changes, so too will a contracting party's rights change, when the law allows arbitration of '34 Act claims, so too does the clause); *but see Esposito v. Hyer, Bikson & Hinson*, No. 88–2105–0, slip op., (D.Kan. Aug. 24, 1988) (holding that in the particular context of the contract between the parties, the clause at issue in these motions excludes from arbitration only those claims which must be litigated under current law); *De Kuyper v. A.G. Edwards & Sons, Inc.*, 695 F.Supp. 1367, 1368–69 (D.Conn.1987) (holding without explanation that if an arbitration clause tracks a portion of Rule 15c2–2 precisely, rescission of the Rule means that '34 Act claims are arbitrable under the contract); *McCowan v. Dean Witter Reynolds, Inc.*, 682 F.Supp. 741, 743 (S.D.N.Y.1987) (same). Accordingly, defendants' motion to compel arbitration of Mignocchi's claims under the '33 and '34 Acts is denied. In contrast, because Mignocchi has no objection to having his RICO and New York common-law claims arbitrated, defendants' motion to compel arbitration of these claims is granted as unopposed.

■ As a related matter, defendants' motion to stay Mignocchi's entire federal suit pending the arbitrator's decision is denied. As the Supreme Court has noted, it is permissible for '33 and '34 Act claims to be heard in this forum even though other claims are proceeding simultaneously before an arbitrator. *Dean Witter Reynolds v. Byrd*, 470 U.S. 213, 222–23, 105 S.Ct. 1238, 1243, 84 L.Ed.2d 158 (1985). More-over, "[a]t least where '33 Act claims are concerned, ... arbitration and federal litigation should proceed simultaneously absent compelling reasons...." *Chang v. Lin*, 824 F.2d 219, 223 (2d Cir.1987). Defendants have not argued that compelling reasons exist for staying Mignocchi's '33 Act claims, and therefore they will proceed simultaneously with the arbitration. More-over, in order to conserve judicial resources, the '34 Act claims will be heard as well. Accordingly, while Mignocchi's suit on the RICO and New York common-law claims will be stayed in favor of arbitration, his claims under the '33 and '34 acts will proceed.

■ Turning to Mignocchi's motion, *Byrd* makes clear that "[t]he collateral-estoppel effect of an arbitration proceeding is at issue only after arbitration is completed...." 470 U.S. at 223, 105 S.Ct. at 1244. However, that does not mean that because arbitration is normally a faster way to resolve disputes than litigation in federal court, that the arbitration proceeding will gain preclusive effect by default. *See Byrd*, 470 U.S. at 217, 221, 105 S.Ct. at 1240, 1242. As the *Byrd* holds, "arbitration proceedings will not necessarily have a preclusive effect on subsequent federal-court proceedings." 470 U.S. at 223, 105 S.Ct. at 1243 (discussing *McDonald v. West Branch*, 466 U.S. 284, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984)). Instead, in order for an arbitration to have preclusive effect, it must meet the traditional prerequisites for the application of collateral estoppel. That is, the issue to be precluded must be identical to the one alleged and litigated in the arbitration; the resolution of the issue by the arbitrator must have been a critical and necessary part of his adjudication; and the party against whom issue preclusion is being asserted must have had a full and fair opportunity to litigate the issue in the arbitration. *Ottley v. Sheepshead Nursing Home*, 784 F.2d 62, 63 (2d Cir.1986) (New York collateral estoppel rules); *Greenblatt v. Drexel Burnham Lambert, Inc.*, 763 F.2d 1352, 1360 (11th Cir.1985) (federal collateral estoppel rules); *Tucker v. Arthur Andersen & Co.*, 646 F.2d 721, 728–29 (2d

Cir.1981) (the "essential to the judgment" requirement); *Restatement (Second) of Judgments* § 84 (1980) (collateral estoppel principles apply to arbitral judgments used in a later federal suit); 18 C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure,* § 4475 (1981 & Supp.1988) (same).

With so many variables, and knowing nothing of how the arbitration will be conducted, it is impossible to tell in advance what the preclusive effect of the arbitration will be. However, until more is known about the arbitration, Mignocchi's motion cannot be ruled upon. Accordingly, it is denied without prejudice to renewal.

SO ORDERED.