Charles AXTELL and
Dorothy E. Axtell

v.

MERRILL LYNCH, PIERCE, FENNER
& SMITH, INC., and Mark
Schlesinger.

No. LR–C–88–625.

United States District Court,
E.D. Arkansas, W.D.

May 23, 1989.

Mark Rialbe, John K. Shamburger, Pope Law Firm, Little Rock, Ark., for plaintiffs.

Scott E. Daniel, Hilburn Law Firm, North Little Rock, Ark., Robert C. Compton, Compton, Prewett, Thomas & Hickey, El Dorado, Ark., for defendants.

## MEMORANDUM OPINION AND ORDER

GEORGE HOWARD, Jr., District Judge.

Pending before the court is defendants' motion for stay of proceedings and order compelling arbitration. Plaintiffs oppose the motion on several grounds, which are discussed below.

Plaintiffs filed this action against defendants, alleging violations of federal securities law, state securities law, and common law fraud. According to plaintiffs' complaint, plaintiffs were customers of defendant Merrill Lynch ("Merrill Lynch") and maintained an account in Merrill Lynch's Hot Springs, Arkansas office. Defendant Schlesinger ("Schlesinger") was the account executive in charge of plaintiffs' account. Plaintiffs allege that the account was opened in the summer of 1985, with an opening balance of about $200,000.00. Plaintiffs contend that Merrill Lynch failed to monitor and supervise Schlesinger, and that Schlesinger, through various fraudulent and unauthorized activities, depleted their account to about $20,000.00 in a fifteen month period.

Among the documents plaintiffs admit to signing at the time they opened their account was a form entitled "Standard Option Agreement Individual and Joint Accounts Only". Paragraph 9 of that form states:

Except to the extent that controversies involving claims arising under the Federal Securities Laws may be litigated, any controversy between us arising out of such option transactions or this agreement shall be settled by arbitration only before the National Association of Securities Dealers, Incorporated, or the New York Stock Exchange, or an Exchange located in the United States upon which listed options transactions are executed. We shall have the right of election as to which of the foregoing tribunals shall conduct the arbitration. Such election is to be by registered mail, addressed to Merrill Lynch's head office at 165 Broadway, New York, N.Y. 10080, attention of the Law Department. The notice of election is to be postmarked five days after the date of your demand to make such election. At the expiration of the five days, we hereby authorize Merrill Lynch to make such election on our behalf.

The form indicates that plaintiffs signed it on July 18, 1985. Defendants assert that plaintiffs must arbitrate their claims pursuant to the agreement.

Section 3 of the Arbitration Act, 9 U.S.C. § 3, empowers the Court to stay proceedings when a valid arbitration agreement exists. Section 4 of the Act, 9 U.S.C. § 4, provides that a party may move to compel arbitration, and the court "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue ... shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."

■ The provisions of the Arbitration Act can be applied only to contracts covered by §§ 1 and 2 of the Act. The Court finds that the instant transaction involves commerce within the meaning of the Act and therefore the Act applies to the contract in the instant case. *See Creson v. Quickprint of America, Inc.,* 558 F.Supp. 984 (W.D.Mo.1983).

■ Absent a ground for revocation of the arbitration agreement, a court must enforce agreements to arbitrate. *Dean*

*Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 105 S.Ct. 1238, 1241, 84 L.Ed.2d 158 (1985). "Accordingly, the first task of a court asked to compel arbitration is to determine whether the parties agreed to arbitrate that dispute. The court is to make this determination by applying the 'federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act.'" *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth,* 473 U.S. 614, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444 (1985).

The Supreme Court has determined that there is a strong presumption in favor of arbitration. *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). "The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1982). Courts are required to "rigorously enforce agreements to arbitrate." *Dean Witter Reynolds Inc. v. Byrd,* 470 U.S. 213, 105 S.Ct. 1238, 1243, 84 L.Ed.2d 158 (1985). *See also Nesslage v. York Securities, Inc.,* 823 F.2d 231, 234 (8th Cir. 1987).

■ Here, plaintiffs contend that they were not informed of the provision in the Standard Option Agreement they signed. They further assert that there was no valid agreement to arbitrate because there was "no meeting of the minds", "no consideration", there was "overreaching, misrepresentations and fraud in the making", and "instrument must be construed against Merrill Lynch, the draftor". (p. 7 of the Memo Brief of Plaintiffs in Support of their Response Opposing Arbitration).

In *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 403–04, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967) the Supreme Court explained:

if the claim is fraud in the inducement of the arbitration clause itself—an issue which goes to the "making" of the agreement to arbitrate—the federal court may proceed to adjudicate it. But the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally.

The Court notes that plaintiffs' allegations of failure of consideration and overreaching go to the making of the contract generally, and therefore are to be considered by the arbitrator.

■ Plaintiffs' contentions concerning defendants' failure to inform them of the existence of the arbitration clause seem also to be connected to the construction of the contract. However, even if the claims of misrepresentation and omission were connected to the making of the arbitration agreement, the Court would find that plaintiffs have failed to establish fraud.

In a similar situation, the Ninth Circuit refused to find that the plaintiffs stated a claim for fraudulent failure to disclose any material facts. *Cohen v. Wedbush, Noble, Cooke, Inc.,* 841 F.2d 282 (9th Cir.1988). The court noted that the stock broker's failure to inform the investors of the meaning and effect of the arbitration clause was an issue suitable for the court's adjudication. The court then went on to state that "[i]n order for a mere omission to constitute actionable fraud, a plaintiff must first demonstrate that the defendant had a duty to disclose the fact at issue." *Id.* at 287.

> We know of no case holding that parties dealing at arm's length have a duty to explain to each other the terms of a written contract. We decline to impose such an obligation where the language of the contract clearly and explicitly provides for arbitration of disputes arising out of the contractual relationship.

*Id.*

The court noted that the plaintiffs were expected to read contracts before they sign them. Here, the contracts clearly provided for arbitration. Plaintiffs have not pointed to any other statements or actions by defendants which could support a claim of misrepresentation. At the most plaintiffs

contend that they were not told of the arbitration clause. That clause, however, was not "undisclosed" as alleged by plaintiffs, but was included in the agreement signed by plaintiffs.

Thus, the Court finds that there exists a valid agreement to arbitrate which requires that the Court compel arbitration of all arbitable claims. Plaintiffs, however, assert that the arbitration agreement does not include the federal securities law violations. Although not expressly stated, plaintiffs appear to concede that the language of the arbitration agreement would, at the least, require arbitration of their state law claims.

 Plaintiffs point to the language of what they characterize as a "conditional" agreement to arbitrate as support for their contention that they can litigate the federal claims. The Court has found two cases in which the arbitration clause had language very similar to the arbitration clause at issue here. In one, *Mignocchi v. Merrill Lynch, Pierce, Fenner & Smith*, 707 F.Supp. 140 (S.D.N.Y.1989), the court held that the customer was not required to arbitrate his federal claims. The court found that the phrase "may be litigated" exempted from mandatory arbitration all claims brought under the federal securities law.

In *Esposito v. Hyer, Bikson, & Hinson, Inc.*, 709 F.Supp. 1020 (D.Kan.1988), the court found that the "except" clause as contained in the agreement to arbitrate clause at issue here merely stated the law as it existed before *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987); i.e., that predispute arbitration agreements could not be enforced to compel arbitration of 1933 or 1934 Securities Act claims under the earlier precedent of *Wilko v. Swan*, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953). The court held that the "except" clause of the arbitration provision only excludes those federal securities laws which would be excludable under current precedent or other applicable regulations. As the plaintiffs' 1934 claims were arbitrable pursuant to *McMahon*, they fell outside the exception of the arbitration clause.

The conflicting decisions reflect the state of flux concerning arbitration. The Court, however, concludes that reasoning of the court in *Esposito* is the better approach, and one which comports with the principle that arbitration agreements should be broadly construed to effectuate the strong federal policy favoring arbitration which has been recently affirmed. On May 15, 1989, the Supreme Court decided *Rodriguez de Quijas v. Shearson/American Express*, 490 U.S. 477, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989). The Court overruled *Wilko v. Swan*, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953), and held that pre-dispute agreements to arbitrate claims under the 1933 Securities Act are enforceable. The Court, in strong, unequivocal language, gave its *imprimatur* to the resolution of disputes by arbitration.

The Court is also of the opinion that the reasoning of the court in *Esposito* is in line with the cases holding that a similar provision pursuant to former Securities and Exchange Commission (SEC) Rule 15c2–2, 17 C.F.R. § 240.15c2–2 does not preserve the right to litigate in federal courts. In December 1983 the SEC promulgated Rule 15c2–2, which provided that "[i]t shall be a fraudulent, manipulative or deceptive act or practice for a broker or dealer to enter into an agreement with any public customer which purports to bind the customer to the arbitration of future disputes between them arising under the Federal Securities laws ..." The Rule further required brokers to advise their customers that they were not required to arbitrate any dispute or controversy arising under the Federal Securities Laws. At the time the Rule was promulgated, courts were relying on the holding of *Wilko v. Swan* that claims arising under the Securities Act of 1933 were not arbitrable. The courts were also extending *Wilko's* holding to claims arising under the Securities Exchange Act of 1934.

*McMahon* laid to rest the issue of whether claims brought under § 10(b) of the 1934 Act were arbitrable. The SEC rescinded the Rule in light of *McMahon*. *See* Rescission of Rule Governing use of Predispute Arbitration Clauses in Broker–Dealer

Customer Agreements, Rel. No. 34–25034, 52 Fed.Reg. 39,216 (Oct. 21, 1987) ("announcing rescission of Rule 15c2–2 ... since, in light of the development of case law, the rule is no longer appropriate.") A number of courts faced with arbitration agreements containing language not requiring arbitration of federal securities law claims pursuant to the Rule have held that the Rule was not intended to alter existing law, but merely stated what the law was at the time it was promulgated. "The vast majority of the courts which have interpreted Rule 15c2–2 and arbitration agreements drafted to comply with that Rule have held that this provision 'merely serves to guarantee that potential plaintiffs receive notice that an agreement to arbitrate does not override existing federal laws limiting the scope of possible litigation; it does not create, nor does it preserve rights to litigate in federal courts.'" *Ballay v. Legg Mason Wood Walker, Inc.*, No. 88–6867, 1988 WL 137464 (E.D.Pa. Dec. 21, 1988), 1988 WL 137464 at p. 7, quoting *Finkle and Rose v. A.G. Becker, Paribas, Inc.*, 622 F.Supp. 1505, 1510 (S.D.N.Y.1985). *See McCowan v. Dean Witter Reynolds, Inc.*, 682 F.Supp. 741, 743 (S.D.N.Y.1987) (provision of required notice did not act substantively to prevent arbitration of federal securities claims pursuant to agreement's arbitration clause); *Shotto v. Laub*, 632 F.Supp. 516, 525 (D.Md.1986) (same). *See also Phillips v. Merrill Lynch, Pierce, Fenner & Smith*, 795 F.2d 1393, 1398 n. 17 (8th Cir.1986) ("Furthermore, we conclude that in adopting Regulation 15c2–2 the SEC intended only to reflect what it believed to be a settled principle of law (i.e. that predispute arbitration agreements are unenforceable under both the 1933 Act and the 1934 Act). As this opinion indicates, the SEC was mistaken.")

Thus, the Court concludes that as with the language which was included in arbitration agreements pursuant to Rule 15c2–2, the language of the agreement to arbitrate in plaintiffs' contract does not serve to exempt federal securities law claims from arbitration; it merely reflects the law. Given that claims under the 1934 Act are now arbitrable, the agreement to arbitrate in the instant case is binding. *See Noble v. Drexel, Burnham, Lambert, Inc.*, 823 F.2d 849 (5th Cir.1987) (*McMahon* is retroactive to agreements prior to its date). *See also Rodriguez de Quijas, supra.*

Plaintiffs also argue that the agreement to arbitrate does not relate to their entire account. Plaintiffs have not produced other documents to support their claim, and in the absence of evidence to the contrary, the Court finds that the agreement to arbitrate extends to any controversy arising out of the plaintiff's account with defendant.

Defendants note that plaintiffs make no reference whatsoever to which federal securities laws they claim have been violated. The only mention of applicable law is in the jurisdictional statement of the complaint wherein plaintiffs state: "This Court has jurisdiction under § 27, Securities Exchange Act of 1934, 15 U.S.C.A. § 78a, particularly § 77aa." (¶ 5 of Complaint)

The Court notes that § 77aa refers to the schedule of information required in a registration statement, and is a provision under the 1933 Act. The Court is of the opinion that plaintiffs intended to cite § 78aa which provides for jurisdiction of suits brought pursuant to the 1934 Act. The Court also notes that plaintiffs do not object to defendant's assertion that plaintiffs are intending to state a claim pursuant to Section 10(b) of the Securities Exchange Act of 1934. Thus, the Court is persuaded that plaintiffs' claims are brought only under the 1934 Act. However, even assuming plaintiffs bring claims under the 1933 Act, such claims are arbitrable. *Rodriguez de Quijas, supra.*

In sum, the Court finds that there is a valid agreement to arbitrate, which covers the claims alleged by plaintiffs.

Accordingly, the motion for an order compelling arbitration and for a stay of proceedings is granted. As the proceedings in this case are stayed to allow the parties to pursue arbitration, and as the matters may be disposed of in arbitration, the Clerk is directed to administratively terminate this action and remove it from the Court's docket. Following the arbitra-

tion, it may be reopened by either party upon a showing of good cause.

IT IS SO ORDERED.