**Rudolph L. NEMES and Mary M. Nemes, Plaintiffs,**

v.

**MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., and Robert F. Sui, Defendants.**

**No. 89–CV–72955–DT.**

United States District Court, E.D. Michigan, S.D.

June 28, 1990.

Mark C. Pierce, Pierce & Pierce, Birmingham, Mich., for plaintiffs.

Douglas G. Graham, Mark L. Kowalsky, Butzel, Keidan, Simon, Myers & Graham, Detroit, Mich., for defendants.

### MEMORANDUM OPINION AND ORDER

WOODS, District Judge.

Plaintiffs Rudolph and Mary Nemes (the Nemeses) have brought the instant action asserting claims arising out of their account with defendant Merrill Lynch, Pierce, Fenner & Smith, Inc. (Merrill Lynch). The case is currently before the Court on defendants' Motion to Compel Arbitration and Stay Proceedings, pursuant to the Federal Arbitration Act, Title 9 U.S.C. §§ 3 and 4.

## I.

The factual background relevant to this motion is very simple. Plaintiffs maintained an account with Merrill Lynch. In opening their account, some time prior to March 12, 1986, the Nemeses signed a Customer Agreement and a Cash Management Account Agreement. In both documents, the Nemeses agreed to arbitrate disputes arising out of the account. The following language from the Customer Agreement is representative:

Agreement to Arbitrate Controversies

13. *Except to the extent that controversies involving claims arising under the Federal securities laws may be litigated,* it is agreed that any controversy between us arising out of your business or this agreement shall be submitted to arbitration conducted under the provisions of ... the New York Stock Exchange, Inc. or ... the National Association of Securities Dealers, Inc., as the undersigned may elect.

(emphasis supplied).

When disagreements arose as to the management of their account, the Nemeses agreed to submit their state law claims to arbitration. However, the Nemeses contend that their federal securities law claims may properly be brought in this Court without prior arbitration. It is, therefore, the interpretation of the above-emphasized first clause of the Agreement to Arbitrate Controversies which is now in dispute.

## II.

■ Before undertaking its analysis, the Court will briefly summarize the history of the law relating to arbitration clauses in securities agreements. The Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, provides that any written provision in any contract which provides for the arbitration of disputes shall be valid, irrevocable, and enforceable. The Federal Arbitration Act is "a congressional declaration of a liberal federal policy favoring arbitration agreements," *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983), and any doubtful issues regarding the applicability of an arbitration clause are to be resolved in favor of arbitration. *Id.* at 24–25, 103 S.Ct. at 941–942; *see also Ryan v. Liss, Tenner & Goldberg Securities Corp.*, 683 F.Supp. 480, Fed.Sec.L.Rep. (CCH) 93,702 (D.N.J.1988).

In 1953, however, the Supreme Court held invalid pre-dispute agreements for arbitration of issues arising under the Securities Act of 1933. *Wilko v. Swan*, 346 U.S. 427, 438, 74 S.Ct. 182, 188, 98 L.Ed. 168 (1953). Many lower courts extended that ruling to issues arising under the 1934 Act. Consequently, and in reliance on *Wilko,* the Securities and Exchange Commission promulgated Rule 15c2–2, 17 C.F.R. § 240.15c2–2, a rule which has since been rescinded. Rule 15c2–2 stated that it was a misleading or fraudulent act for a broker not to advise customers that they were not required to arbitrate a controversy arising under the federal securities laws. In response, and in order to comply with Rule 15c2–2, most brokerage firms added standard "notice provisions" instructing customers that the law stated that they were not required to arbitrate their federal securities claims.

In *Shearson/American Express, Inc. v. McMahon,* 480 U.S. 903, 107 S.Ct. 1343, 94 L.Ed.2d 515 (1987), however, the Supreme Court disagreed with the lower courts' extension of the *Wilko* ruling, and held that agreements to arbitrate 1934 Act claims are enforceable under the Federal Arbitration Act. While the Supreme Court did not expressly overrule *Wilko,* it repudiated *Wilko's* rationale, and the majority of courts has held that *Wilko* is no longer good law insofar as it holds that claims under the Securities Act of 1933 are non-arbitrable. *See, e.g., Jeske v. Brooks,* 875 F.2d 71, 74 (4th Cir.1989). In response to *McMahon,* the SEC promptly rescinded its Rule 15c2–2. *See* 52 Fed.Reg. 39,216 (1987). Courts have given retroactive effect to the rescission of Rule 15c2–2, holding that the Rule did not grant customers a substantive right, but rather only required brokers to notify customers of the then-existing state of the law relating to the arbitrability of federal securities claims. *Jeske, supra,* at 75.

Turning now to the case at bar, the Court must determine the effect of the clause in the Nemeses' Customer Agreement which reads "[e]xcept to the extent that controversies involving claims arising under the Federal securities laws may be litigated" all claims will be arbitrated. This language is less than a model of clarity. The Nemeses argue that that clause conveys a substantive right to the Nemeses: the right to litigate all claims arising under the federal securities laws. The Nemeses argue that, while the clause may have been inserted by Merrill Lynch only for the purpose of complying with Rule 15c2–2, there is no indication of this in the contract. The Nemeses argue that they read and relied upon the clause as granting them the right to litigate their federal claims.

Merrill Lynch, on the other hand, argues that the clause was simply a notice provision of then-current law, and that the clause did not create any substantive rights and did not waive a broker's right to arbitrate federal securities law claims. Merrill Lynch argues that this result is the only one consistent with the Supreme Court's ruling that doubts as to arbitrability are to be resolved in favor of arbitration.

A review of the case law in this area reveals a split among the circuits, as well as among the lower courts. Of the seven circuits which have addressed the issue, four have construed language similar to the instant clause as compelling arbitration. *See Bird v. Shearson Lehman/American Express*, 871 F.2d 292 (2nd Cir.1989); *Jeske, supra; Adrian v. Smith Barney, Harris, Upham & Co.*, 841 F.2d 1059 (11th Cir.1988); *Villa Garcia v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 833 F.2d 545 (5th Cir.1987). Two circuits have allowed the claims to proceed in federal court. *See Ballay v. Legg Mason Wood Walker, Inc.*, 878 F.2d 729 (3rd Cir.1989); *Coffey v. Dean Witter Reynolds*, 891 F.2d 261 (10th Cir.1989). The Ninth Circuit is split within itself. *Compare Cohen v. Wedbush, Noble, Cooke, Inc.*, 841 F.2d 282 (9th Cir.1988) *with Van Ness Townhouses v. Mar Industries Corp.*, 862 F.2d 754 (9th Cir.1989).

The Sixth Circuit has not ruled on the issue. However, several district courts within the Sixth Circuit have required that federal securities claims proceed to arbitration despite language similar to that in the case at bar. *See, e.g., Wolverine Carbide Die Co. Employees' Profit Sharing Trust v. Birnbaum*, No. 88–CV–70384–DT, (E.D. Mich. May 5, 1988) (Cohn, J.); *Wilkerson v. J.C. Bradford & Co.*, Comm.Fut.L.Rep. 24,-491. 1989 WL 96532 (W.D.Ky. April 6, 1989).

Finally, two courts which have had before them identical clauses in Merrill Lynch agreements have compelled the claims to arbitration, finding that the Rule 15c2–2 clause did not act to preserve a right to litigate federal securities claims. *See Villa Garcia, supra; Axtell v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 744 F.Supp. 194 (E.D.Ark.1990) ("[T]he Court concludes that as with the language which was included in arbitration agreements pursuant to Rule 15c2–2, the language of the agreement to arbitrate in plaintiffs' contract does not serve to exempt federal securities law claims from arbitration; it merely reflects the law. Given that claims under the 1934 Act are now arbitrable, the agreement to arbitrate in the instant case is binding.").

Plaintiffs here rely on the contrary ruling in *Mignocchi v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 707 F.Supp. 140 (S.D.N.Y.1989). *Mignocchi* also interpreted a Merrill Lynch clause identical to that in the case at bar, but contrary to the above cases, *Mignocchi* held that the clause specifically exempted from mandatory arbitration all claims capable of being brought under the federal securities laws, and expressly reserved the right to litigate such claims to the customer. However, it is not clear that *Mignocchi* is good law, even in the district in which it was decided. That is, the subsequent decision of the Second Circuit in *Bird, supra*, held that

The court below also correctly determined that the final sentence in the arbitration provision did not remove appellees' securities claims from the ambit of the agreement to arbitrate. Rather that statement was merely a disclosure re-

quired by the Securities and Exchange Commission.[1]

The *Mignocchi* decision is also inconsistent with another recent Southern District of New York decision, *DiNatale v. Shearson Lehman Hutton, Inc.*, Fed.Sec.L.Rep. (CCH) 94,956 1990 WL 16171 (S.D.N.Y. February 15, 1990). Thus, *Mignocchi* is of dubious persuasion.

Having reviewed the case law and the arguments of the parties, the Court finds that the weight of authority favors compelling the arbitration of federal securities law claims despite the existence of Rule 15c2–2 language. The Court also finds that these decisions are the better-reasoned ones, and that they are more in line with the Supreme Court's current strong endorsement favoring arbitration as a method of dispute resolution.

Accordingly, defendant's Motion to Compel Arbitration and Stay Proceedings is GRANTED. Plaintiffs shall submit all of their claims to arbitration in accordance with the terms of the arbitration agreement and this action is stayed pending the resolution of arbitration.

So ordered.

---

**1.** The "final sentence" to which the Second Circuit refers is not identical to the language in the case at bar, but it is very similar. It reads: "This agreement to arbitrate does not apply to any controversy with a public customer for which a remedy may exist pursuant to an expressed or implied right of action under certain of the federal securities laws."