BLUE GRAY CORPORATIONS I & II and First Sunset Corporation, Plaintiffs–Appellees, Cross–Appellants,

v.

MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., Defendant–Appellant, Cross–Appellee.

No. 90–5069.

United States Court of Appeals, Eleventh Circuit.

Jan. 15, 1991.

---

5. Furthermore, in agreeing that the settlement did not prevent the Justice Department from pursuing criminal sanctions, Mr. Bizzell must have recognized the remedial nature of the payment.

Bennett Falk, Alex J. Sabo, Miami, Fla., for defendant-appellant, cross-appellee.

William P. McCaughan, Jeffrey B. Crockett, Miami, Fla., for plaintiffs-appellees, cross-appellants.

Before FAY and EDMONDSON, Circuit Judges, and TUTTLE, Senior Circuit Judge.

FAY, Circuit Judge:

Defendant-appellant Merrill Lynch, Pierce, Fenner & Smith, Inc., appeals a district court order denying its motion to compel arbitration of claims arising under federal securities laws, filed by plaintiffs-appellees Blue Gray Corporations I & II and First Sunset Corporation. Plaintiffs cross-appeal the district court's order, which compelled arbitration of plaintiffs' state law claims against defendant. We hold that the plain language of the arbitration agreement provided plaintiffs the right to litigate federal securities law claims, and that the arbitration agreement could be construed to compel arbitration of state law claims. Accordingly, we AFFIRM.

## BACKGROUND

This case depends solely upon the interpretation of an arbitration provision included in certain agreements into which plaintiffs and defendant entered. Between May 13, 1985, and April 24, 1987, plaintiffs signed several investment account agreements with defendant.[1] Each of these

---

1. Blue Gray I executed a "Customer Agreement" and "Cash Management Account Agreement" on May 13, 1985. Blue Gray II executed a "Customer Agreement," "Cash Management Account

agreements contained virtually identical "Arbitration Agreement" provisions. The arbitration agreements provided, in pertinent part:

> Except to the extent that controversies involving claims arising under the Federal securities laws may be litigated, it is agreed that any controversy between us arising out of your business or this agreement shall be submitted to arbitration....

In September 1989, plaintiffs brought suit in federal district court against defendant, alleging violations of the Securities Exchange Act of 1934, and raising various state law claims.[2] Defendant moved to compel arbitration of all the claims. The district court denied defendant's motion to compel arbitration as to plaintiffs' federal securities claims, but granted defendant's motion to compel arbitration of the state claims. Defendant appeals, and plaintiffs cross-appeal.

## DISCUSSION

The question before us is whether the exception clause in the arbitration agreement permits plaintiffs the option of choosing whether to submit to arbitration controversies involving claims arising under federal securities laws. A corollary to this question is whether the state claims fall within the language "controversies involving claims arising under Federal securities laws."

▮ The Federal Arbitration Act ("FAA") provides that written arbitration clauses in securities agreements are valid and enforceable. 9 U.S.C. § 2 (1988). Section 2 of the FAA is "a congressional declaration of a liberal federal policy favoring arbitration agreements." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Id.* (footnote omitted). Yet, arbitration agreements are, essentially, creatures of contract. *Goldberg v. Bear, Stearns & Co.*, 912 F.2d 1418, 1419 (11th Cir.1990). Accordingly, parties to a contract will not be required to arbitrate when they have not agreed to do so. *Id.* (citing *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 478, 109 S.Ct. 1248, 1255, 103 L.Ed.2d 488 (1989)). Likewise, parties who do agree to arbitrate are not prevented from excluding certain claims from the scope of their arbitration agreement. *Volt*, 489 U.S. at 478, 109 S.Ct. at 1255 (citing *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 628, 105 S.Ct. 3346, 3354–55, 87 L.Ed.2d 444 (1985) (citation omitted)). Our circuit has recognized that

> [t]he courts are not to twist the language of the contract to achieve a result which is favored by federal policy but contrary to the intent of the parties. The Federal Arbitration Act (FAA) "simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms."

*Goldberg*, 912 F.2d at 1419–20 (quoting *Volt*, 489 U.S. at 478, 109 S.Ct. at 1255). The FAA was designed "to make arbitration agreements as enforceable as other contracts, but not more so." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n. 12, 87 S.Ct. 1801, 1806 n. 12, 18 L.Ed.2d 1270 (1967).

Defendant argues that the clause in the arbitration agreement, "Except to the extent that controversies involving claims arising under Federal securities laws may be litigated" is ambiguous. If ambiguous,

---

Agreement," and "Standard Option Agreement (Institutional Accounts Only)" on September 28, 1986. Sunset executed a "Customer Agreement," "Cash Management Account International Agreement," and "Standard Options Agreement (Institutional Accounts Only)" on April 24, 1987.

2. Plaintiffs alleged violations of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Exchange Act Rule 10b–5, 17 C.F.R. § 240.10b–5; Chapter 517 of the Florida Statutes; common law fraud; breach of contract; breach of fiduciary duty; and negligence.

defendant proposes that any interpretive doubt must be construed in favor of arbitration.

### 1. Federal Securities Laws Claims.

■ The district court ruled that the plain meaning of the arbitration agreement provided an exception to arbitration for claims arising under federal securities laws. We agree.

Defendant contests the district court's ruling by citing several other district courts which, according to defendant, interpreted virtually identical exclusionary language to require arbitration. *See, e.g., Nemes v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 741 F.Supp. 657 (E.D.Mich. 1990); *Axtell v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 744 F.Supp. 194 (E.D.Ark.1989); *Esposito v. Hyer, Bikson, & Hinsen, Inc.,* 709 F.Supp. 1020 (D.Kan. 1988). Defendant contends that the district court in this case erred in finding the exclusionary language to have only one plain meaning, and claims that the exclusionary language is ambiguous, capable of more than one reasonable interpretation. Defendant supports its contention by reasoning that if district courts reasonably could disagree as to the meaning of the exclusionary language, such language is ambiguous. If ambiguous, defendant then suggests that the language should be construed to compel arbitration, according to the principle set forth in *Moses H. Cone.*

The problem with defendant's reasoning is that the cases cited applied Securities and Exchange Commission Rules to arbitration agreements in a manner which this circuit has rejected. *See Goldberg,* 912 F.2d at 1420 & n. 1. Rule 15c2–2(a), which was rescinded in October of 1987, provided:

It shall be a fraudulent, manipulative or deceptive act or practice for a broker or dealer to enter into an agreement with any public customer which purports to bind the customer to the arbitration of future disputes between them arising under the Federal securities laws, or to have in effect such an agreement, pursuant to which it effects transactions with or for a customer.

17 C.F.R. § 240.15c2–2(a) (1987) (rescission effective October 27, 1977, 52 Fed.Reg. 39,-216 (1987)). The rule required brokerage firms to notify customers that by signing such arbitration agreements, they had not waived their right to bring federal securities claims in court.[3] *See Storer,* 914 F.2d at 217; *Goldberg,* 912 F.2d at 1420.

Some courts have given retroactive effect to the rescission of Rule 15c2–2. In those cases, the plaintiffs claimed that Rule 15c2–2 excluded federal securities law claims from arbitration. They did not argue that the contractual provision itself granted any substantive exception to arbitration. The courts concluded that the Rule did not grant customers any substantive right, but rather only required brokers to notify customers of the then-existing state of the law regarding the arbitrability of federal securities claims. *Nemes v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 741 F.Supp. 657, 658 (E.D.Mich.1990) (citing *Jeske v. Brooks,* 875 F.2d 71, 75 (4th Cir. 1989)); *see, e.g., Axtell v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 744 F.Supp. 194 (E.D.Ark.1989); *cf., e.g., Esposito v. Hyer, Bikson, & Hinson, Inc.,* 709 F.Supp. 1020 (D.Kan.1988). Thus, in retroactively rescinding the rule, arbitration was compelled. We believe, however, that regard-

---

**3.** This SEC Rule was promulgated in response to *Wilko v. Swan,* 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953), and subsequent cases, which held that pre-dispute agreements to arbitrate federal securities claims were void and unenforceable, because they constituted unlawful attempts to waive substantive rights granted under the securities laws. *Storer v. Miller,* 914 F.2d 215, 217, 218 (11th Cir.1990) (citing Fed. Sec.L.Rep. (CCH) at 85–967); *Goldberg,* 912 F.2d at 1419; *see Wilko v. Swan,* 346 U.S. at 434–35, 74 S.Ct. at 186–87. In 1987, the Supreme Court

in *Shearson/American Express v. McMahon,* 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987), reversed its position and held that such arbitration agreements are not waivers of a substantive right granted under the securities laws and therefore are not void. *Goldberg,* 912 F.2d at 1420 (citing *Rodriguez de Quijas v. Shearson/American Express, Inc.,* 490 U.S. 477, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989); *McMahon* ). Following *McMahon,* the SEC rescinded Rule 15c2–2.

less of whether Rule 15c2–2 itself granted any substantive right, the "parties are bound by what they agreed to do, not by what they would have would have agreed to do if the law [Rule 15c2–2] had been different at the time." *Goldberg*, 912 F.2d at 1420. The terms of the contract, if clear, should be enforced.

The arbitration clause in this case did more than merely notify the plaintiff of the existing state of the law; it expressed the agreement between the parties. *See id.* at 1421. The parties agreed to arbitrate controversies "[e]xcept to the extent that controversies involving claims arising under Federal securities laws may be litigated." The district court found the plain meaning of the clause to provide plaintiff with the option to bring federal securities claims in court. Defendant would have us, in essence, read the word "may" to mean "must." We find no reason to change the plain meaning of the language. Defendant presumably was capable of drafting this agreement in a way so that plaintiff's federal securities claims would now be arbitrable under current law.[4] Even in light of the presumption in favor of arbitration, and the strong temptation to rewrite the arbitration agreement to achieve that result, we recognize that the presumption does not require parties to arbitrate when they have not agreed to do so. *Goldberg*, 912 F.2d at 1421 (citations omitted). Defendant must abide by the terms of the agreement it drafted. Accordingly, the district court's order denying the defendant's motion to compel arbitration is AFFIRMED.

2. State law claims.

Plaintiffs cross-appealed the district court's decision to compel arbitration of plaintiffs' state law claims. Plaintiffs assert that "controversies" includes pendent state law claims which arise out of the same transactions or occurrences as federal securities law claims. We disagree. We believe the contract clearly provided for state law claims to be arbitrated, even those which arise out of the same transactions or occurrences as federal securities law claims. However, even if "controversies" reasonably could be construed to be ambiguous, such ambiguity would not change the result on this issue. Any doubts arising out of the construction of the contract language concerning the scope of arbitrable issues should be construed liberally to favor arbitration. *Moses H. Cone*, 460 U.S. at 24–25, 103 S.Ct. at 941–42. Because we find the contractual language unambiguous regarding arbitration of state law claims, and alternatively, in light of the policy of resolving ambiguity in favor of arbitration, we hold that the district court correctly compelled arbitration of the state law claims. Accordingly, we AFFIRM.

4. E.g., "Except to the extent that controversies involving claims arising under Federal securities laws are not arbitrable under applicable securities laws...."