875 F.2d 71
 Fed. Sec. L. Rep. P 94,494, RICO Bus.Disp.Guide 7203
 Herbert A. JESKE, Plaintiff-Appellee,
v.
George E. BROOKS; Robinson-Humphrey Company, Inc.;
Shearson Lehman Brothers, Inc.,
Defendants-Appellants (Two Cases).
Herbert A. JESKE, Plaintiff-Appellant,
v.
George E. BROOKS; Robinson-Humphrey Company, Inc.;
Shearson Lehman Brothers, Inc.,
Defendants-Appellees (Two Cases).
 Nos. 86-2146, 86-2167, 87-2047 and 87-2048.
 United States Court of Appeals,
Fourth Circuit.
 Argued June 6, 1988.
Decided May 11, 1989.
 
 Randel Eugene Phillips (James P. McLoughlin, Jr., Moore & Van Allen, Charlotte, N.C., Theodore A. Krebsbach, Jeffrey L. Friedman, Mary E. Reisert, Shearson Lehman Hutton, Inc., on brief), for defendants-appellants.
 David L. Terry (Ernest W. Machen, Jr., Paul B. Taylor, Blakeney, Alexander & Machen, Charlotte, N.C., on brief), for plaintiff-appellee.
 Before HALL, MURNAGHAN and WILKINS, Circuit Judges.
 MURNAGHAN, Circuit Judge:
 
 
 1
 We are called upon to decide two issues: (1) whether the district court erred in refusing to order arbitration of federal claims under the Securities Act of 1933 ("Securities Act"), the Securities Exchange Act of 1934 ("Exchange Act"), and the Racketeer Influenced and Corrupt Organization Act ("RICO"), and (2) whether the district court erred in compelling arbitration of various state law claims. We conclude that the district court should have ordered arbitration of the federal claims and should have stayed litigation of those claims pending the arbitration. However, we lack jurisdiction to review the district court's order compelling arbitration of the state claims.
 
 I.
 
 2
 The case before us arose out of a dispute between an investor and his former stockbroker. The investor is Herbert A. Jeske, who began dealing with George E. Brooks, a broker, in late January 1983. At that time Brooks was an employee of Robinson-Humphrey Company, Inc. ("Robinson-Humphrey"), a subsidiary of Shearson-Lehman Brothers, Inc. ("Shearson-Lehman"). Jeske signed a standard customer's agreement with Brooks in March 1983. Paragraph 13 of the agreement contained an arbitration clause covering all disputes over matters relating to the agreement.[1] Paragraph 15 of the agreement provided that any provisions of the agreement that conflicted with laws or administrative regulations "shall be deemed to be rescinded or modified in accordance with any such rule, law, or regulation."
 
 
 3
 Eight months after Jeske signed the agreement, the Securities and Exchange Commission ("SEC") adopted Rule 15c2-2, which provided, in pertinent part, that:
 
 
 4
 [i]t shall be a fraudulent, manipulative or deceptive act or practice for a broker or dealer to enter into an agreement with any public customer which purports to bind the customer to the arbitration of future disputes between them arising under the Federal securities laws, or to have in effect such an agreement, pursuant to which it effects transactions with or for a customer.
 
 
 5
 17 C.F.R. Sec. 240.15c2-2(a) (1987). The rule took effect December 28, 1983. The SEC rescinded the rule effective October 21, 1987.
 
 
 6
 Jeske filed suit in 1986 against Brooks, Robinson-Humphrey and Shearson-Lehman, seeking recovery under Sections 12(2) and 17 of the Securities Act,[2] 15 U.S.C. Secs. 77l (2) and 77q; Section 10(b) of the Exchange Act, 15 U.S.C. Sec. 78j(b) and SEC Rule 10b-5; and RICO, 18 U.S.C. Sec. 1961 et seq. Jeske also asserted a variety of state law claims against the defendants, based on theories of fraud, breach of contract, negligence, breach of fiduciary duty, and violations of the North Carolina Securities Act, N.C.Gen.Stat. Sec. 78A-1 et seq., and the North Carolina Unfair Trade Practices Act, N.C.Gen.Stat. Sec. 75-1.1. Jeske alleges that Brooks advised him to make certain inappropriate investments that resulted in losses.
 
 
 7
 Brooks and the other defendants, relying on the arbitration clause in the customer's agreement, moved to stay litigation pending arbitration. The district court ruled that Jeske's state law claims were arbitrable but that his federal claims were not. Accordingly, the district court compelled arbitration of the state claims but refused to order arbitration of the federal claims.[3]
 
 
 8
 Parties on both sides of the dispute appealed.[4]
 
 II.
 
 9
 While the parties' appeals were pending, our jurisdiction was called into question by the Supreme Court's decision in Gulfstream Aerospace Corp. v. Mayacamas Corp., 485 U.S. 271, 108 S.Ct. 1133, 99 L.Ed.2d 296 (1988). Gulfstream abolished the Enelow-Ettelson[5] doctrine, which had provided courts a basis of jurisdiction to review interlocutory orders granting or denying motions to stay litigation pending arbitration. We subsequently held in two unrelated cases that orders denying stays pending arbitration or refusing to compel arbitration were appealable under 28 U.S.C. Sec. 1292(a)(1), notwithstanding the holding in Gulfstream. J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A., 863 F.2d 315, 318 (4th Cir.1988); Kansas Gas & Elec. Co. v. Westinghouse Elec. Corp., 861 F.2d 420, 422 (4th Cir.1988). However, it remained unclear after Gulfstream whether we had jurisdiction to review orders compelling arbitration or staying legal proceedings pending arbitration.[6]
 
 
 10
 Congress recently dispelled doubts about our jurisdiction by amending the Federal Arbitration Act, 9 U.S.C. Sec. 1 et seq. The amendment makes clear that we have jurisdiction to consider an appeal from an order refusing a stay pending arbitration or an order denying a motion to compel arbitration. See 9 U.S.C. Sec. 15(a)(1). However, we have no jurisdiction, absent certain exceptions not applicable here, to review an interlocutory order compelling arbitration or granting a stay pending arbitration. See id. Sec. 15(b).[7]
 
 
 11
 Thus, we will address the merits of the defendants' appeals challenging the district court's refusal to compel arbitration of the federal claims. However, we must dismiss Jeske's appeals challenging the order to compel arbitration of the state law claims.
 
 III.
 
 12
 Turning to the merits, we must first decide whether Jeske's federal claims are arbitrable. If they are, we must then address Jeske's assertion that the arbitration clause in the customer's agreement is invalid, and thus, no basis exists for compelling arbitration.
 
 A.
 Arbitrability of Federal Claims
 
 13
 Clearly, claims under RICO and Sec. 10(b) of the Exchange Act are arbitrable. The Supreme Court so held in Shearson/American Express, Inc. v. McMahon, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987).
 
 
 14
 Jeske's Securities Act claim presents a more difficult problem. In Wilko v. Swan, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953), the Supreme Court held that claims under Sec. 12(2) of the Securities Act were non-arbitrable. However, the Supreme Court in McMahon refused to apply Wilko 's holding to preclude arbitration of claims arising under the Exchange Act. Although McMahon did not expressly overrule Wilko, see 482 U.S. at 232-34, 107 S.Ct. at 2341, McMahon repudiated Wilko 's rationale. We conclude that Wilko is no longer good law insofar as it holds that claims under the Securities Act of 1933 are non-arbitrable.
 
 
 15
 The circuits disagree on the question whether Wilko remains binding precedent. Although acknowledging that McMahon has called the rationale of Wilko into question, the Second and Third Circuits still consider Wilko good law. See Chang v. Lin, 824 F.2d 219, 222 (2d Cir.1987); Osterneck v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 841 F.2d 508, 512 (3rd Cir.1988) (dictum). By contrast, the Fifth Circuit has held that McMahon effectively overruled Wilko, and thus claims under Sec. 12(2) of the Securities Act are arbitrable. Rodriguez De Quijas v. Shearson/Lehman Bros., Inc., 845 F.2d 1296, 1298-99 (5th Cir.1988), cert. granted, --- U.S. ----, 109 S.Ct. 389, 102 L.Ed.2d 379 (1988). See also Noble v. Drexel, Burnham, Lambert, Inc., 823 F.2d 849, 850 n. 3 (5th Cir.1987) ("McMahon undercuts every aspect of Wilko v. Swan ...; a formal overruling of Wilko appears inevitable--or, perhaps, superfluous"); Peterson v. Shearson/American Express, Inc., 849 F.2d 464, 466 (10th Cir.1988) ("In McMahon, the Supreme Court essentially overruled Wilko ").
 
 
 16
 We agree with the Fifth Circuit's opinion in Rodriguez De Quijas. Wilko was premised on a mistrust of arbitration and a suspicion about the competence of arbitral tribunals. See 346 U.S. at 435-37, 74 S.Ct. at 186-88. McMahon, however, declared that Wilko 's assumptions about arbitration no longer have validity:
 
 
 17
 Thus, the mistrust of arbitration that formed the basis for the Wilko opinion in 1953 is difficult to square with the assessment of arbitration that has prevailed since that time. This is especially so in light of the intervening changes in the regulatory structure of the securities laws. Even if Wilko 's assumptions regarding arbitration were valid at the time Wilko was decided, most certainly they do not hold true today for arbitration procedures subject to the SEC's oversight authority.
 
 
 18
 482 U.S. at 232-34, 107 S.Ct. at 2341. The Fifth Circuit has correctly read McMahon as completely undercutting the rationale for the Wilko holding. Rodriguez De Quijas, 845 F.2d at 1299. Thus, Wilko no longer is binding authority on the question of arbitrability of Sec. 12(2) claims under the Securities Act of 1933.
 
 
 19
 We conclude that all of Jeske's federal claims are arbitrable, including the ones arising under the Securities Act. Thus, we must turn to Jeske's assertions that the arbitration clause in the parties' agreement is invalid.
 
 B.
 Validity of Arbitration Clause
 
 20
 Jeske contends that the arbitration clause is invalid and, therefore, no basis exists for compelling arbitration of his federal claims. First, he argues that SEC Rule 15c2-2 and Paragraph 15 of the parties' agreement rendered the arbitration clause "null and void." Jeske also argues that the agreement containing the arbitration clause is itself void for lack of consideration and because of "overreaching, unconscionability and fraud" in the inducement of the agreement. Neither argument provides a basis for refusing to compel arbitration of Jeske's federal claims.
 
 
 21
 Paragraph 15 of the Customer's Agreement provides that any portion of the agreement will be deemed rescinded to the extent that it conflicts with governing laws or administrative regulations. Jeske argues that Paragraph 15 requires the invalidation of the arbitration clause because that clause conflicts with SEC Rule 15c2-2, which was adopted after the parties entered the customer's agreement. Rule 15c2-2 forbade clauses in customer agreements that required arbitration of federal securities law claims.
 
 
 22
 We disagree that Paragraph 15 and SEC Rule 15c2-2 nullified the arbitration clause. The SEC has rescinded Rule 15c2-2. See 52 Fed.Reg. 39,216 (1987). Thus, the arbitration agreement, insofar as it applies to Jeske's federal claims, does not now conflict with the SEC rule.
 
 
 23
 Although the SEC did not rescind Rule 15c2-2 until after this litigation began, we have no problem applying the rescission retroactively to cover the present case. In doing so, we join at least three other circuits that have given retroactive effect to the rescission of Rule 15c2-2. Villa Garcia v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 833 F.2d 545, 547-48 (5th Cir.1987); Adrian v. Smith Barney, Harris, Upham & Co., 841 F.2d 1059, 1062 (11th Cir.1988); Cohen v. Wedbush, Noble, Cooke, Inc., 841 F.2d 282, 288 (9th Cir.1988).
 
 
 24
 We follow the usual rule that "federal cases should be decided in accordance with the law existing at the time of decision." Saint Francis College v. Al-Kharzraji, 481 U.S. 604, 608, 107 S.Ct. 2022, 2025, 95 L.Ed.2d 582 (1987). Of course, courts will depart from that rule if "a change in the law is unfairly disruptive of a litigant's course of conduct or reasonable expectations." Noble, 823 F.2d at 850, citing Chevron Oil Co. v. Huson, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971). No such injustice would result here from a retroactive application of Rule 15c2-2's rescission. Jeske could not have relied on Rule 15c2-2 in signing the customer's agreement, because the SEC did not adopt the rule until some eight months after Jeske entered the contract. Furthermore, we have seen no evidence to suggest that Jeske would not have signed the agreement if he had foreseen that his securities claims would be arbitrable. Certainly, the plain language of the arbitration clause gives no indication that federal securities claims were to be treated differently than other disputes between the parties. Of course, if rescission of the SEC rule had represented a change in Jeske's substantive rights, we would be more inclined to deny retroactive effect to the change. However, we agree with the Fifth Circuit that a party's preference for litigation over arbitration "does not rise to the level of a substantive right." Noble, 823 F.2d at 851. Because the SEC has rescinded Rule 15c2-2, we reject Jeske's argument that that rule rendered the arbitration clause null and void.
 
 
 25
 We also reject Jeske's arguments that the arbitration clause must be declared invalid on grounds that the customer's agreement as a whole is void due to "overreaching, unconscionability and fraud," as well as lack of consideration. Because the alleged defects pertain to the entire contract, rather than specifically to the arbitration clause, they are properly left to the arbitrator for resolution. Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 403-04, 87 S.Ct. 1801, 1805-06, 18 L.Ed.2d 1270 (1967); Merrill Lynch, Pierce, Fenner, & Smith, Inc. v. Haydu, 637 F.2d 391, 398 (5th Cir. Unit B 1981). Therefore, the alleged invalidity of the customer's agreement does not preclude arbitration of Jeske's federal claims.IV.
 
 
 26
 In conclusion, we reverse that portion of the district court judgment that refused to compel arbitration of Jeske's claims under RICO, the Securities Act of 1933, and the Securities Exchange Act of 1934. Accordingly, we remand the case to the district court with instructions to compel arbitration of those federal claims and to stay litigation of those same claims pending the arbitration.
 
 
 27
 As to the district court's order compelling arbitration of Jeske's various state law claims, we have no jurisdiction to review that decision. Accordingly, we dismiss the appeals challenging that aspect of the district court judgment.
 
 
 28
 Nos. 86-2146, 87-2048 REVERSED AND REMANDED.
 
 
 29
 Nos. 86-2167, 87-2047 DISMISSED.
 
 
 
 [1]
 The relevant portion of the arbitration clause states:
 Unless unenforceable due to federal or state law, any controversy arising out of or relating to my accounts, to transactions with you for me or to this agreement or the breach thereof, shall be settled by arbitration in accordance with the rules then in effect, of the National Association of Securities Dealers, Inc. or the Boards of Directors of the New York Stock Exchange, Inc. and/or the American Stock Exchange, Inc., as I may elect.
 
 
 [2]
 We limit our holding on arbitrability of Securities Act claims to actions arising under Sec. 12(2). Jeske's claim under Sec. 17 no longer remains viable, in light of our recent decision in Newcome v. Esrey, 862 F.2d 1099 (4th Cir.1988) (en banc ), in which we held that Sec. 17(a) of the Securities Act implied no private cause of action
 
 
 [3]
 Although Brooks and the other defendants moved for a stay of proceedings pending the arbitration, the district court treated it as a motion to compel arbitration. In practical effect, no difference exists between a stay pending arbitration and an order compelling arbitration. Zosky v. Boyer, 856 F.2d 554, 556 (3rd Cir.1988), cert. denied, --- U.S. ----, 109 S.Ct. 868, 102 L.Ed.2d 992 (1989)
 
 
 [4]
 The case before us consists of four appeals in all: two appeals by Brooks and the other defendants and two appeals by Jeske. Each side appealed following the district court's order of August 26, 1986, which compelled arbitration of the state law claims but refused to require arbitration of the federal claims. After the district court denied Jeske's motion to reconsider its ruling, both Jeske and the defendants again appealed. After the Supreme Court's decision in Shearson/American Express, Inc. v. McMahon, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987), we consolidated the four appeals
 
 
 [5]
 The Supreme Court articulated the doctrine in Enelow v. New York Life Ins. Co., 293 U.S. 379, 55 S.Ct. 310, 79 L.Ed. 440 (1935), and Ettelson v. Metropolitan Life Ins. Co., 317 U.S. 188, 63 S.Ct. 163, 87 L.Ed. 176 (1942)
 
 
 [6]
 After Gulfstream, some circuits held that no basis existed for asserting jurisdiction over appeals of such orders. See, e.g., DeFuertes v. Drexel, Burnham, Lambert, Inc., 855 F.2d 10, 11-12 (1st Cir.1988) (order compelling arbitration); Zosky v. Boyer, 856 F.2d 554, 561 (3d Cir.1988) (same), cert. denied, --- U.S. ----, 109 S.Ct. 868, 102 L.Ed.2d 992 (1989)
 
 
 [7]
 Section 15 provides, in pertinent part, as follows:
 (a) An appeal may be taken from--
 (1) an order--
 (A) refusing a stay of any action under section 3 of this title,
 (B) denying a petition under section 4 of this title to order arbitration to proceed.
 * * *
 (b) Except as otherwise provided in section 1292(b) of title 28, an appeal may not be taken from an interlocutory order--
 (1) granting a stay of any action under section 3 of this title;
 (2) directing arbitration to proceed under section 4 of this title....
 Although Sec. 15 permits appeal of an interlocutory order granting a stay pending arbitration or compelling arbitration to proceed if the requirements of 28 U.S.C. Sec. 1292(b) are satisfied, the present case does not fall within Sec. 1292(b).
 Section 15 became effective upon the President's signature on November 19, 1988.