Edith H. OTTENRITTER, Plaintiff,

v.

SHEARSON LEHMAN HUTTON, INC., Defendant.

Civ. A. No. HAR 89–1309.

United States District Court, D. Maryland.

Nov. 6, 1989.

## MEMORANDUM OPINION

HARGROVE, District Judge.

Currently pending before this Court is defendant Shearson Lehman Hutton, Inc.'s ("Shearson") Motion to Stay Judicial Proceedings and Compel Arbitration. The issues have been fully briefed. A hearing on the issues was held on September 26, 1989.

### FACTS

Plaintiff Edith H. Ottenritter ("Ottenritter") opened a nondiscriminatory individual brokerage account with Shearson on October 30, 1984. On November 7, 1984, Ottenritter and her husband opened a joint brokerage account with Shearson. Plaintiff claims that at all times pertinent to her complaint she was an unsophisticated investor whose purpose was to preserve capital and generate income through a conservative investment strategy.

Apparently no trades were made in either account in 1984. In 1985, plaintiff alleges that her broker Peter Gibson ("Gibson") recommended that she buy and sell securities in her account. Plaintiff claims that Gibson would call with recommendations which he and the plaintiff would discuss before she approved the transaction.

Plaintiff now claims that throughout 1986, 1987, and 1988, Gibson engaged in an intentional pattern of unauthorized trading in order to generate excessive and unjustified revenue through a per trade mark-up or commission. Ottenritter claims losses in 1986, totaling approximately $358,502.74, losses in 1987, totaling approximately $113,986.38, and losses in 1988, totaling approximately $14,141.78.

Plaintiff alleges that her husband had a meeting with Gibson in November of 1987, in which Gibson represented that plaintiff's individual account was not only sound, but that there were sufficient assets in plaintiff's account to pay her $1,200 per month from dividend and interest income. Plaintiff claims that Gibson did not mention any margin debt or margin interest owed by plaintiff during that meeting.

In January, 1988, Ottenritter claims that Gibson contacted her and recommended that she purchase securities in "The Ship, Inc." According to Ottenritter, Gibson told her that she must buy these securities directly from the issuer and that he would send her money from her individual account with which to buy the stocks. Plaintiff now claims that the money that Gibson sent to her came from the joint account instead.

Ottenritter claims that when she inquired about the status of her investment in "The Ship, Inc.," she was sent a check for a return on her investment plus profit. Plaintiff alleges that this money was not earnings on her investment in "The Ship, Inc.," but money which Gibson withdrew from her individual account. According to Ottenritter, the money originally withdrawn from the joint account by Gibson, and sent to her to buy securities in "The Ship, Inc.," has never been accounted for.

Plaintiff's account was charged with margin debt and interest. Ottenritter claims that she first learned of the margin debt and interest owed on September 30, 1988. Following notification to plaintiff of the margin debt in her account, Ottenritter was required to make cash payments to Shearson to cover margin calls.

Plaintiff charges that Shearson churned her account and committed fraud in the purchase and sale of securities in violation of section 10(b) of the Securities Exchange Act of 1934, (15 U.S.C. 78j) (1934 Act); Securities Exchange Commission Rule 10b–5 (17 C.F.R. section 240.10b–5); section 15(c) of the Securities Exchange Act of 1934 (15 U.S.C. 78o); and Securities and Exchange Commission Rules 15c–1 and

15c–2 promulgated thereunder (17 C.F.R. section 240.15c–1 and 240.15c–2); and sections 20(a) and (b) of the Securities Exchange Act of 1934 (15 U.S.C. sections 78t(a) and (b)). In response, Shearson has moved to compel arbitration.

When plaintiff opened her accounts in 1984, she signed customer agreements. The agreements signed by Ottenritter contained an arbitration clause which states in pertinent part:

> Unless unenforceable due to federal or state law, any controversy arising out of or relating to my accounts, to transactions with you for me or to this Agreement or the breach thereof, shall be settled by arbitration in accordance with the rules then in effect.... This Agreement to arbitrate does not apply to any controversy with a public customer for which a remedy may exist pursuant to an express or implied right of action under certain of the federal securities laws.

Customer Agreement at paragraph 13. Defendant argues that paragraph thirteen entitles it to have all disputes arising out of this contract arbitrated. Conversely, plaintiff argues that the last sentence of paragraph thirteen mandates litigation of her federal securities law claims.

The law in this area has changed drastically since the customer agreements were signed in 1984. At that time, the legal landscape was defined by *Wilko v. Swan,* 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953). In *Wilko,* the Supreme Court held that a predispute agreement to arbitrate claims arising out of section 12(2) of the Securities Act of 1933, (1933 Act) was not enforceable. The Court's decision rested upon a mistrust of the arbitration process. *See Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 228–29, 107 S.Ct. 2332, 2338–39, 96 L.Ed.2d 185 (1987) (*"Wilko* must be understood, therefore, as holding that the plaintiff's waiver of the 'right to select the judicial forum' ... was unenforceable only because arbitration was judged inadequate to enforce the statutory

rights created by [section] 12(2)," *citing Wilko,* 346 U.S. at 435, 74 S.Ct. at 186).

By 1984, federal courts were divided on whether to apply *Wilko* to claims arising under the Securities Exchange Act of 1934 (1934 Act). *See, e.g., Raiford v. Buslease, Inc.,* 745 F.2d 1419 (11th Cir.1984) (1934 Act claims not arbitrable); *Surman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 733 F.2d 59 (8th Cir.1984) (1934 Act claims not arbitrable); *West v. Drexel Burnham Lambert, Inc.,* 623 F.Supp. 26 (W.D.Wash. 1985) (1934 Act claims are arbitrable); *Finkle and Ross v. A.G. Becker Paribas, Inc.,* 622 F.Supp. 1505 (S.D.N.Y.1985) (1934 Act claims are arbitrable); *see also Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 215–16, n. 1, 105 S.Ct. 1238, 1240, n. 1, 84 L.Ed.2d 158 (1985) (lists cases holding 1934 Act claims not arbitrable).

The split between the courts on whether to apply *Wilko* to the 1934 Act was not resolved until the Supreme Court's ruling in *Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987). In *McMahon,* the Supreme Court upheld predispute agreements to arbitrate claims brought under both the 1934 Act and the Racketeer Influenced and Corrupt Organizations Act (RICO). The Court's decision made clear that its prior mistrust of arbitration had evaporated.

The Arbitration Act[1] thus establishes a "federal policy favoring arbitration," *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 24 [103 S.Ct. 927, 941, 74 L.Ed.2d 765] (1983), requiring that "we rigorously enforce agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd, supra,* [470 U.S.] at 221 [105 S.Ct. at 1242]. This duty to enforce arbitration agreements is not diminished when a party bound by an agreement raises a claim founded on statutory rights. As we observed in *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,*[2] "we are well past the time when judicial suspicion of the desirability of arbitration and of the competence of arbitral tribu-

---

1. Federal Arbitration Act, 9 U.S.C. Sec. 1 *et seq.* ("the Act").

2. 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985).

nals" should inhibit enforcement of the Act " 'in controversies based on statutes.' " 473 U.S., at 626–627 [105 S.Ct. at 3353–54], quoting *Wilko v. Swan, supra,* at 432 [74 S.Ct. at 185]. Absent a well-founded claim that an arbitration agreement resulted from the sort of fraud or excessive economic power that "would provide grounds 'for the revocation of any contract,' " 473 U.S., at 627 [105 S.Ct. at 3354], the Arbitration Act "provides no basis for disfavoring agreements to arbitrate statutory claims by skewing the otherwise hospitable inquiry into arbitrability." *Ibid.*

*McMahon,* 482 U.S. at 226, 107 S.Ct. at 2337.

*McMahon* did not expressly overrule *Wilko,* leaving the lower courts to determine whether *Wilko,* which held that 1933 Act claims could not be arbitrated, was still good law. *See, e.g., Chang v. Lin,* 824 F.2d 219 (2d Cir.1987) (1933 Act claims not arbitrable); *Continental Service Life and Health Ins. Co. v. A.G. Edwards & Sons, Inc.,* 664 F.Supp. 997 (M.D.La.1987) (1933 Act claims not arbitrable); *Staiman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 673 F.Supp. 1009 (C.D.Cal.1987) (1933 Act claims are arbitrable).

In May of 1989, the Supreme Court finally overruled *Wilko* in *Rodriguez de Quijas v. Shearson/American Express, Inc.,* —— U.S. ——, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989). In *Rodriguez,* the Supreme Court held that 1933 Act claims were in fact arbitrable.

> The only conceivable distinction in this regard between the Securities Act and the Securities Exchange Act is that the former statute allows concurrent federal-state jurisdiction over causes of action and the latter statute provides for exclusive federal jurisdiction. But even if this distinction were thought to make any difference at all, it would suggest that arbitration agreements, which are "in effect, a specialized kind of forum selection clause," *Scherk v. Alberto–Culver Co.,* 417 U.S. 506, 519 [94 S.Ct. 2449, 2457, 41 L.Ed.2d 270] (1974), should not be prohibited under the Securities Act, since they,

> like the provision for concurrent jurisdiction, serve to advance the objective of allowing buyers of securities a broader right to select the forum for resolving disputes whether it be judicial or otherwise.

*Rodriguez,* 109 S.Ct. at 1921.

After the Court's decision in *Rodriguez,* there can be no question that all claims under the 1933 and 1934 Acts are arbitrable. Therefore, unless this Court finds an intention in the arbitration clause of the contract to the contrary, all of plaintiff's federal securities claims are arbitrable.

 Arbitration is the creation of contract. *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960). Whether an issue is arbitrable depends on the contract entered into by the parties. *Atkinson v. Sinclair Refining Co.,* 370 U.S. 238, 241, 82 S.Ct. 1318, 1320, 8 L.Ed.2d 462 (1962). As with other contracts, the intention of the parties controls. *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 626, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444 (1985). Initially, this Court must determine what disputes Ottenritter and Shearson agreed to arbitrate. *Id.*

 The first section of the arbitration clause provides that, unless unenforceable due to a federal or state law, any controversy regarding the account be settled by arbitration. The language in this section of the Ottenritter contract is identical to the language in the arbitration clause at issue in *McMahon.* Thus, *McMahon* requires arbitration in this case unless the last sentence of the arbitration clause changes the meaning of the clause.

The last sentence of paragraph thirteen provides that the arbitration clause does not apply to any controversy under "certain of the federal securities laws" for which there is a right of action. Plaintiff claims that the last sentence of paragraph thirteen shows the intent of the parties to litigate any federal securities law claims. Defendants counter that the language at issue was inserted into the contract to comply with a then-effective Securities and Ex-

change Commission ("SEC") rule and that the language does not exclude arbitration of Ottenritter's claims.

Effective January 1, 1984, the SEC adopted Rule 15c2–2 which provided that:

(a) It shall be a fraudulent, manipulative or deceptive act or practice for a broker or dealer to enter into an agreement with any public customer which purports to bind the customer to arbitration of future disputes between them arising under the federal securities laws, or to have in effect such an agreement, pursuant to which it effects transactions with or for a customer.

SEC Rule 15c2–2, 17 C.F.R. Sec. 240.15c2–2, repealed by 52 Fed.Reg. 39,216 (1987). Many brokerage firms inserted qualifying language into their arbitration agreements because of Rule 15c2–2. It is uncontested that the clause at issue in this case was inserted into Ottenritter's contract to comply with Rule 15c2–2.

In September, 1985, the SEC issued a "no action" letter making clear that under Rule 15c2–2 brokers need only advise clients that broad arbitration agreements did "not constitute a waiver of the right to seek a judicial forum where such a waiver would be void under the federal securities laws." Letter from Mark D. Fitterman, Associate Director, SEC Division of Market Regulation, to William J. Fitzpatrick, General Counsel, Securities Industry Association (Sept. 18, 1985). In 1987, following the *McMahon* ruling, the SEC rescinded Rule 15c2–2 as "no longer appropriate in light of case law development." Sec. Exch. Act Rel. 25034, [1987 Transfer Binder] Fed.Sec. L.Rep. (CCH) Para. 84,163 (Oct. 15, 1987). Following the rulings of *McMahon* and *Rodriguez* and the recission of Rule 15c2–2, arbitration is now the favored practice. *See Peoples Security Life Insurance Co. v. Monumental Life Insurance Co.*, 867 F.2d 809, 813 (4th Cir.1989); *Hall v. Shearson Lehman Hutton, Inc.*, 708 F.Supp. 711, 712 (D.Md.1989).

This Court has interpreted the scope of Rule 15c2–2 and the effect of arbitration agreements which contain language inserted to comply with the rule. "Rule 15c2–2

merely serves to guarantee that potential plaintiffs receive notice that an agreement to arbitrate does not override existing federal laws limiting the scope of possible litigation; it does not create, nor does it preserve rights to litigate in federal courts." *Fisher v. Prudential–Bache Securities, Inc.*, 635 F.Supp. 234, 236 (D.Md. 1986) (citations omitted); *Shotto v. Laub*, 632 F.Supp. 516, 527 (D.Md.1986) (citations omitted). *Shotto*, and by adoption, *Fisher*, found that the language of Rule 15c2–2 was "procedural, providing only for notice to the customer, and does not act substantively to prevent arbitration of all federal securities claims." *Shotto*, 632 F.Supp. at 527. The contract at issue in *Fisher* did not explicitly contain Rule 15c2–2 language, but was signed during the time period when Rule 15c2–2 was in effect. *Fisher* was affirmed in pertinent part by the Fourth Circuit. *Fisher v. Prudential–Bache Securities*, 831 F.2d 290 (4th Cir. 1987) (unpublished memorandum opinion).

The *Shotto* case took the Rule 15c2–2 language analysis even further. *Shotto* consisted of claims under *inter alia* the 1933 and 1934 Acts. In the *Shotto* contract, the contract language was more specific than the language used in the Ottenritter contract.

Certain decisions by the federal courts have held that if a dispute involves a claim arising under the Securities Act of 1933 or the Securities Exchange Act of 1934, such arbitration clauses are void and unenforceable as applied to such claims and accordingly customers cannot be compelled to arbitrate such a claim. In other contexts the courts generally enforce arbitration clauses of customers agreements. Therefore, nothing in this paragraph shall in any way constitute a waiver or limitation of any right which the undersigned may have under any Federal Securities Laws.

*Shotto*, 632 F.Supp. at 520. After concluding that plaintiff's claims under Sec. 10(b) of the 1934 Act and Rule 10b–5 were arbitrable under *McMahon*, the *Shotto* court determined that the language inserted into

the *Shotto* contract to comply with Rule 15c2–2 did not preclude arbitration. *Id.*

In essence, the *Shotto* court concluded that the effect of the language inserted into the contract to comply with Rule 15c2–2 was procedural, applied the then-current law and enforced arbitration of all claims (except the one specifically precluded under *Wilko*).

The Fourth Circuit recently revisited the effect of language inserted into a contract to comply with Rule 15c2–2 in *Jeske v. Brooks*, 875 F.2d 71 (4th Cir.1989). In *Jeske*, the plaintiff Herbert A. Jeske ("Jeske") signed a customer agreement which contained an unqualified arbitration clause. Eight months after Jeske signed the agreement, Rule 15c2–2 was adopted by the SEC. Jeske filed suit against Brooks and Shearson–Lehman in 1986, before Rule 15c2–2 was rescinded. The case reached the Fourth Circuit after the recission of Rule 15c2–2.

As a preliminary matter, the Fourth Circuit held that all of Jeske's claims were arbitrable, including the 1933 Act claims, even without the express overruling of *Wilko*. *Jeske*, 875 F.2d at 74. The court then dismissed Jeske's argument that the arbitration clause was rendered null and void by Rule 15c2–2. "Although the SEC did not rescind Rule 15c2–2 until after this litigation began, we have no problem applying the recission retroactively to cover the present case. In doing so, we join at least three other circuits that have given retroactive effect to the recission of Rule 15c2–2." *Jeske*, 875 F.2d at 75.

The Fourth Circuit then followed "the usual rule that 'federal cases should be decided in accordance with the law existing at the time of decision.'" *Jeske*, 875 F.2d at 75 (citations omitted). The court found that no injustice would result from the application of the then-current law to Jeske's contract because Jeske had not relied on the arbitration clause when he signed the agreement and because "a party's preference for litigation over arbitration 'does not rise to the level of a substantive right.'" *Jeske*, 875 F.2d at 75 quoting *Noble v. Drexel, Burnham, Lambert, Inc.,*

823 F.2d 849, 850 (5th Cir.1987). The court also noted that there was no evidence that Jeske would not have signed the customer agreement if he had known that his securities claims would be arbitrable. *Id.* The Fourth Circuit then remanded the case to the district court to compel arbitration and stay the litigation of the federal securities claims. *Id.*

This Court is satisfied that the last sentence of the arbitration clause was inserted into the Ottenritter contract to comply with Rule 15c2–2. Plaintiff argues that the inclusion of language designed to comply with Rule 15c2–2 in Ottenritter's contract distinguishes this case from *Jeske*. This Court disagrees.

If Ottenritter had signed the same arbitration clause without the last sentence, the clause would have been identical to the clause in *McMahon* and would have been arbitrable. *See McMahon, Rodriguez,* and *Jeske*. The addition of the language designed to comply with Rule 15c2–2 language does not now preclude the arbitration of the federal securities law claims. The Fourth Circuit has interpreted Rule 15c2–2 as procedural; the language does not create or preserve a right to litigate. *See Jeske*, 875 F.2d at 75; *Fisher*, 635 F.Supp. at 236; and *Shotto*, 632 F.Supp. at 527. Moreover, the Fourth Circuit has specifically held that the recission of Rule 15c2–2 is to be applied retroactively. This Court must apply the current law to the Ottenritter contract unless there is a specific intent to the contrary.

Ottenritter also argues that her claim must be litigated because the last sentence of paragraph thirteen is a binding provision of the contract that precludes the arbitration of federal securities laws violation. Plaintiff cites *Gooding v. Shearson Lehman Bros., Inc.*, 878 F.2d 281 (9th Cir. 1989) and *Ballay v. Legg Mason Wood Walker, Inc.*, 878 F.2d 729 (3rd Cir.1989) to support her position. The contract language in both cases is the same as, or similar to, the language contained in Ottenritter's contract. *Gooding* and *Ballay* held that the language in question bound the

parties under contract law and therefore must be followed.

 The Ninth Circuit noted in *Gooding* that it is unclear which of the federal securities laws or claims arising thereunder the parties meant to exempt from arbitration. *See Gooding*, 878 F.2d at 284, quoting *Van Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d 754, 757 (9th Cir.1988). The *Gooding* court construed the ambiguity of the arbitration clause against the drafter of the contract, Shearson, and held that all federal securities laws claims were not arbitrable. *Id.* Contrary to the Ninth Circuit's holding in *Gooding*, this Court finds that, under the Federal Arbitration Act, any ambiguity in the language of the Ottenritter contract must be interpreted in favor of arbitration.

The Act sets forth the general federal law relating to arbitration. In order for the Act to apply to a contract, the court must find that there was an agreement in writing providing for arbitration, and the contract evidenced a transaction involving interstate commerce. *American Home Assurance Co. v. Vecco Concrete Const. Co.*, 629 F.2d 961, 963 (4th Cir.1980). This Court finds that the Act applies to Ottenritter's contract.

As with other contracts, the intent of the parties controls, but intent is generously construed in favor of arbitrability. *Mitsubishi*, 473 U.S. at 625, 105 S.Ct. at 3353. The Supreme Court has determined that:

> questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration.... The Arbitration Act establishes that, as a matter of federal law, *any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself* or an allegation of waiver, delay, or a like defense to arbitrability....

*Id.* at 626, 105 S.Ct. at 3353, quoting, *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). Applying the Arbitration Act to Ottenritter's con-

tract, any ambiguity in the contract language must be construed in favor of arbitration.

This court finds that no injustice will incur to plaintiff if her federal securities claims are arbitrated. Therefore, in accordance with the current state of the law, plaintiff's claims must be submitted to arbitration and this litigation stayed. It will be so ordered.