AMERICAN CASUALTY COMPANY OF READING, PENNSYLVANIA, Plaintiff–Appellant,

v.

L–J, INCORPORATED; U.S. Construction Company, Incorporated, Defendants–Appellees.

No. 93–2339.

United States Court of Appeals, Fourth Circuit.

Argued July 12, 1994.

Decided Sept. 13, 1994.

ARGUED: Charles E. Carpenter, Jr., Richardson, Plowden, Grier & Howser, P.A., Columbia, SC, for appellant. Amy M. Snyder, Henry Pickett Wall, Sr., Haynsworth, Marion, McKay & Guerard, Greenville, SC, for appellees. **ON BRIEF:** Francis M. Mack, Deborah Harrison Sheffield, Richardson, Plowden, Grier & Howser, P.A., Columbia, SC, for appellant.

Before NIEMEYER, MICHAEL, and MOTZ, Circuit Judges.

Dismissed by published opinion. Judge MOTZ wrote the opinion, in which Judge NIEMEYER and Judge MICHAEL joined.

## OPINION

MOTZ, Circuit Judge:

A surety for a subcontractor appeals from the district court's order granting the general contractor's motion to compel arbitration and stay litigation "pending the outcome of arbitration between the parties." Because the arbitration claim was embedded in an action asserting other claims, the district court's order was not final. Accordingly, we lack jurisdiction to consider the appeal and so it must be dismissed.

I.

This action arose from a $35.9 million road construction project initiated by the Georgia Department of Transportation. The general contract for this project was awarded to appellee, L–J, Inc. (L–J), who, in turn, subcontracted portions of the project to U.S. Construction Company, Inc. (U.S.). In a written subcontract, U.S. agreed to perform excavation, engineering, and traffic control.

On September 19, 1991, appellant American Casualty Company of Reading, Pa. (American), as surety for U.S., executed per-

formance and payment bonds in the amount of $5,317,640 obligating American to L–J in the event of a default by U.S. on the subcontract. Both the performance and payment bonds included the following language:

> WHEREAS, Principal [U.S.] has by written agreement dated June 20, 1991 entered into a subcontract with Obligee [L–J] for clearing, grading, project management and all work associated with items in Attachment # 1 of subcontract agreement ... *which subcontract is by reference made a part hereof* ....

L–J and U.S. included, among other provisions in the subcontract, a clause governing the resolution of disputes related to the subcontract that provided in pertinent part:

> *The Subcontractor agrees that if any controversy arises* between Subcontractor and the Contractor and/or the Owner [1]in respect to the amount, quantity, kind, classification, price or value of the work performed or to be performed by the subcontractor, [2] or in respect to the kind, character, condition, suitability, utility price or value of any material or supplies furnished or to be furnished by the Subcontractor, or the proper interpretation of the plans, specifications, or original contract, [3] or in respect to any alleged delay or delays in the prosecution or completion of the work made or caused to be made by the Subcontractor, [4] or in respect to any kind of labor or manner of performance thereof, [5] or in respect to any other matter or thing pertaining to or connected with the work provided for herein, the Contractor may, in its direction [sic], compromise and settle the same. . . . *Arbitration of any controversy hereunder shall be at the sole option of the Contractor,* and such arbitration, if elected by the Contractor, shall proceed under the Construction Industry Rules of the American Arbitration Association.

(emphasis added).

During the course of the project, a dispute arose over U.S.'s ability to complete its obligations under the subcontract. L–J accordingly sent a demand for arbitration to both U.S. and American, which L–J also filed with the American Arbitration Association. In its demand, L–J stated that U.S. had encountered financial difficulties, which caused U.S. to be unable to fulfill its obligations without advance payments from L–J for labor and materials. L–J further stated that when U.S. defaulted under the subcontract and was unable to repay L–J for these advance payments, L–J had requested that American cure the default, which American refused to do. L–J sought to recover over $2.1 million in "actual damages" from U.S. and American and over $2.6 million in punitive damages from American for its alleged "bad faith refusal to honor its obligations under the performance bond."

In response to this demand, American filed the instant action seeking (1) a declaration that the "payment and performance bonds," which it had executed as surety for U.S., were "null, void, and of no effect[,]" (2) a preliminary injunction to stay arbitration pending litigation as to the underlying bonds and contracts, (3) a permanent injunction barring "all arbitration proceedings related to this matter," and (4) a declaration as to American's obligations under its bonds and whether it "acted in bad faith" in its handling of this matter. American moved to stay arbitration; L–J moved to stay litigation and compel arbitration. The court granted L–J's motion to stay litigation and compel arbitration and denied American's motion to stay arbitration. When American asked the court to reconsider its order the court denied the motion. American now appeals the court's order compelling arbitration and "statistically stay[ing]" the litigation "pending the outcome of arbitration between the parties."

American challenges the lower court's order, asserting that it is not bound by the terms of the arbitration clause contained in the subcontract. American further argues that even if it had a duty to arbitrate certain aspects of the subcontract, the "narrowly drawn" arbitration clause does not encompass the issues of the surety bond's validity or L–J's allegations as to American's bad faith. We cannot reach these issues because

the district court's decision was not final and so we have no jurisdiction over this appeal.[1]

## II.

■■■ Section 16 of the Federal Arbitration Act governs the appealability of arbitration orders, and provides:

(a) An appeal may be taken from—

(1) an order—

(A) refusing a stay of any action under section 3 of this title,

(B) denying a petition under section 4 of this title to order arbitration to proceed,

(C) denying an application under section 206 of this title to compel arbitration,

(D) confirming or denying confirmation of an award or partial award, or

(E) modifying, correcting, or vacating an award;

(2) an interlocutory order granting, continuing, or modifying an injunction against an arbitration that is subject to this title; or

(3) a final decision with respect to an arbitration that is subject to this title.

(b) Except as otherwise provided in section 1292(b) of title 28, an appeal may not be taken from an interlocutory order—

(1) granting a stay of any action under section 3 of this title;

(2) directing an arbitration to proceed under section 4 of this title;

(3) compelling arbitration under section 206 of this title; or

(4) refusing to enjoin an arbitration that is subject to this title.

9 U.S.C. § 16 (Supp. V 1994).[2]

Thus, § 16 authorizes immediate appellate review of an order "refusing a stay" of litigation pending arbitration or an order denying a motion to compel arbitration. 9 U.S.C. § 16(a)(1)(A), (B), & (C) (Supp. V 1994). It matters not whether these orders are final or interlocutory because orders that favor litigation over arbitration are *"immediately* appealable, even if interlocutory in nature." *Stedor Enterprises, Ltd. v. Armtex, Inc.,* 947 F.2d 727, 730 (4th Cir.1991) (emphasis added). On the other hand, § 16 generally precludes appellate review of orders that favor arbitration over litigation " 'until after the arbitration has gone forward to a final award.' " *Id.* (quoting David D. Siegel, *Practice Commentary,* 9 U.S.C.A. § 16, at 219 (West Supp.1991), now found at 9 U.S.C.A. § 16, at 270 (West Supp.1994) [hereinafter *Practice Commentary* ] ). *See also* Edith H. Jones, *Appeals of Arbitration Orders—Coming out of the Serbonian Bog,* 31 S. Tex. L.Rev. 361, 375 (1990) (observing that appealability "principle is in accord with the pro-arbitration outlook of the [Federal Arbitration Act]").

Although an order favoring arbitration, like the one issued by the court below, is generally not immediately appealable, appellate jurisdiction may exist if that order is " 'a final decision with respect to an arbitration.' " *Stedor,* 947 F.2d at 730 (quoting § 16(a)(3)). Appellate jurisdiction to review such an order, thus, depends on whether the order is "final" or "interlocutory" within the meaning of § 16.[3] *Id.* at 731. Because these terms are not expressly defined in the statute, "Congress intended courts to continue

---

**1.** We earlier denied L–J's motion to dismiss for lack of jurisdiction. That denial, of course, does not preclude our reconsideration of our jurisdiction to entertain American's appeal. *See Humphrey v. Prudential Sec. Inc.,* 4 F.3d 313, 314 n. 1 (4th Cir.1993).

**2.** Section 16 was originally codified at 9 U.S.C. § 15. It was renumbered by the Judicial Improvements Act of 1990, Pub.L. No. 101–650, Title III, § 325(a)(1), 104 Stat. 5089, 5120 (1990). Certain of the prior cases and other authorities cite the previous codification; however-

er, because the two versions are identical, we shall refer to the statute as § 16 throughout this opinion for clarity.

**3.** The general rule barring interlocutory appeals from orders favoring arbitration is also subject to an exception not relevant here, *i.e.,* "those interlocutory appeals certified for review by a district court" pursuant to 28 U.S.C. § 1292(b). *See* 9 U.S.C. § 16(b) (Supp. V 1994); *Humphrey, supra,* 4 F.3d at 316 n. 7; *Jeske v. Brooks,* 875 F.2d 71, 73 (4th Cir.1989).

the prior, settled usage of those terms." *Id.* Accordingly, an order is a " 'final decision' " if it " 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.' " *Id.* (quoting *Catlin v. United States,* 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945)); *see* 134 Cong.Rec. S16,309 (daily ed. Oct. 14, 1988) (section-by-section analysis of legislation placed in record by Sen. Heflin), *quoted in Stedor,* 947 F.2d at 731; *see also Bernstein by Bernstein v. Menard,* 728 F.2d 252, 253 (4th Cir.1984).

Relying on these principles, our prior decisions concerning appellate jurisdiction to review orders favoring arbitration have focused on the question of whether arbitrability was the sole issue presented in the action or whether the issue of arbitrability originated as part of an action raising other claims for relief. *See Humphrey v. Prudential Sec. Inc.,* 4 F.3d 313, 315–19 (4th Cir.1993); *Delta Fin. Corp. v. Paul D. Comanduras & Assoc.,* 973 F.2d 301, 304–05 (4th Cir.1992); *Stedor,* 947 F.2d at 729–32; *Jeske v. Brooks,* 875 F.2d 71, 73–74 (4th Cir.1989). The latter circumstance, in which the arbitrability issue is raised as "an incident to a pending action," is frequently referred to as "an 'embedded' proceeding to denote that the arbitrability issue has been raised in some broader context." *Practice Commentary, supra,* at 270.

The lower court's order in *Jeske* compelled arbitration as to certain state-law claims but denied arbitration as to federal claims in a multi-claim action. The denial of arbitration was immediately appealable, but the order compelling arbitration was not. *Jeske,* 875 F.2d at 73–74. In *Stedor,* we noted, with regard to the order in *Jeske* compelling arbitration, that, because the action before the court was a multicount claim asserting several theories of liability, the arbitrability issue was not the sole question before the court. The order compelling arbitration was, therefore, "plainly interlocutory" to the extent that it did not finally dispose of all claims then before the court. *Stedor,* 947 F.2d at 731.

We then went on to hold in *Stedor* that an order compelling the arbitration of a contractual dispute was a "final decision" for the purpose of determining whether we had jurisdiction pursuant to 9 U.S.C. § 16(a)(3). *Stedor,* 947 F.2d at 731. This was so because an order that compels arbitration "in a proceeding in which the sole issue before the district court is the arbitrability of the dispute" constitutes a " 'final decision' within the meaning of section 16(a)(3) and hence is appealable." *Id.* at 731–32. A similar situation was presented in *Delta Financial.* Accordingly, there we again held that we had jurisdiction to review a lower court order compelling arbitration, which had "finally decided the sole question presented by Delta's complaint, namely, whether an order to compel [its adversary] to arbitrate ... should be granted." *Delta Financial,* 973 F.2d at 304.

In *Humphrey* we were presented with a case that contained elements of the *Jeske* "embedded proceeding" and the *Stedor* and *Delta Financial* situation, in which arbitrability was the sole issue. *Humphrey* involved the question of the immediate appealability of an order in an action, in which arbitrability of the dispute was not the sole issue, but in which all substantive issues would be decided by the arbitrator and so were, at least in a sense, effectively resolved by the order to arbitrate. *Humphrey,* 4 F.3d at 317. "At first blush," we noted that the argument asserted by the appellant in *Humphrey* "resemble[d]" that asserted in *Stedor* because "the practical effect of the district court's actions was to render a final resolution to all issues before it." *Id.* However, relying on the "well-reasoned and well-substantiated" analysis in *Perera v. Siegel Trading Co., Inc.,* 951 F.2d 780 (7th Cir. 1992), we distinguished the two cases, holding that an order compelling arbitration "in an embedded proceeding," like the order at issue in *Humphrey,* is a nonappealable interlocutory order, "even when all the claims in which the arbitration issue is embedded are resolved" by that order. *Humphrey,* 4 F.3d at 318.

The result reached in *Humphrey* is in accord with the holdings of the majority of the other circuits, which have found no jurisdiction over appeals from orders that direct arbitration of all claims raised in embedded proceedings. *See Adair Bus Sales, Inc. v. Blue Bird Corp.,* 25 F:3d 953, 955 (10th

Cir.1994) (even though district court dismissed remaining claims in embedded proceeding, order to arbitrate was not appealable); *Gammaro v. Thorp Consumer Discount Co.,* 15 F.3d 93, 96 (8th Cir.1994) (following "same bright line rule adopted in *Humphrey* and *Perera, i.e.*—'that an embedded proceeding may not give rise to a final decision subject to section 16(a)(3) review, even when all the claims in which the arbitration issue is embedded are resolved'"); *Filanto, S.P.A. v. Chilewich Int'l Corp.,* 984 F.2d 58, 61 (2d Cir.1993) (no appellate jurisdiction over order that directed parties to arbitrate contract dispute because action had not yet been "adjudicated" even though complaint only contained contract claims); *Perera,* 951 F.2d at 785 (rejecting argument that order to arbitrate in embedded proceeding was final just "because ... Judge ... sent all claims to arbitration"); *Delta Computer Corp. v. Samsung Semiconductor & Telecommunications Co.,* 879 F.2d 662, 664–65 (9th Cir.1989) (dismissing appeal from order staying litigation of all claims in underlying suit pending arbitration); *Campbell v. Dominick & Dominick, Inc.,* 872 F.2d 358, 359 (11th Cir.1989) (dismissing appeal from order compelling arbitration of all substantive claims in embedded action); *Turboff v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 867 F.2d 1518, 1519–21 (5th Cir.1989) (same). *But see Arnold v. Arnold Corp.,* 920 F.2d 1269, 1273–76 (6th Cir.1990) (finding appellate jurisdiction in embedded proceeding where order compelling arbitration dismissed action rather than merely staying it).

Nevertheless, American asserts that the present appeal should not be dismissed because the district court's order left nothing for it "to do with regard to any claim set forth in American Casualty's complaint." To support this argument American, in its response to the motion to dismiss, characterized its action as one that "sought a determination from the district court that it has not entered any valid agreement to arbitrate any disputes with L–J." *Id.* American certainly sought such a determination; however, American also sought additional and separate declaratory relief. In the first count of its complaint, it sought a declaration that the bonds were "null, void and of no effect." In

its fourth count, it sought an additional declaration that "if the Court determines that the referenced bonds are valid, [it] determines the extent of any obligation of American Casualty under the bonds and whether American Casualty has acted in bad faith in its investigation of this claim[.]"

Similarly, in response to an interrogatory propounded by L–J asking American to describe the basis for "the relief [sought] in this action," American asserted:

> This is a declaratory judgment action asking the Court to construe the rights and obligations of the various parties under the terms of payment and performance bonds for a construction contract.
>
> . . . .
>
> The bonds were issued based upon the subcontract referred to in the bonds. The substitution of a different agreement between the parties renders the bonds null and void.
>
> L–J has filed a demand for arbitration against American Casualty and U.S. American Casualty is requesting an Order barring, both temporarily and permanently, the arbitration proceeding. It is not a party to an arbitration agreement and seeks to have the Court declare that it is not obligated to proceed with arbitration. It will be irreparably harmed if the arbitration is allowed to proceed since U.S. Construction is only a nominal party and is unable or unwilling to protect its rights due to the domination of U.S. Construction by L–J.
>
> If the Court should determine that the bonds in question are effective, American Casualty is asking the Court to declare what American Casualty's responsibilities to L–J are under the bonds. In addition, L–J is alleging bad faith as to American Casualty for its handling of this claim under the bond. American Casualty is seeking to have the Court declare that it has not acted in bad faith in this matter.

Thus, American clearly sought relief, albeit only declaratory relief, beyond a determination as to the arbitrability of this dispute.

No case decided after the adoption of § 16 (or its previous codification as § 15) has ex-

plicitly interpreted the statute to determine whether it permits the immediate appeal of an order compelling arbitration in a case in which the appellant has sought only declaratory relief. However, one recent case, without mentioning the statute, expressly held that an appeal of an order to arbitrate in an embedded action was not final even though the only substantive claim was a request for declaratory relief. *Corion Corp. v. Chen*, 964 F.2d 55, 59–60 (1st Cir.1992). *Corion* closely resembles the instant case. The plaintiff, an employer, requested a declaratory judgment in response to its former employee's demand for arbitration concerning the propriety of his termination. In its complaint, the employer sought "1) a declaration that Chen [the employee] was not entitled to arbitrate the discharge decision (count 1) and 2) a declaration that plaintiff was entitled to discharge Chen (count 2)." *Id.* at 56. The district court, like the court below, "granted defendant's motion to stay proceedings .... [and] directed that the case be 'administratively closed' pending arbitration." *Id.* On appeal, the employer argued that the district court had finally adjudicated an action that had sought "nothing more than an order to compel arbitration" and so was appealable. *Id.* at 57. The First Circuit rejected this argument reasoning:

> [The employer] did not ask the court to decide only arbitrability; it also asked the court to determine that Corion was entitled to discharge Chen. To be sure, the court has dismissed the second count in view of its determination that the personnel manual arbitration provision was enforceable. But it has not purported to enter a final order, and it may well contemplate reexamining that dismissal depending upon the outcome of arbitration.

*Id.* at 58.

Prior to enactment of the statute governing appealability of arbitration orders, the Seventh Circuit reached a similar conclusion. *See Whyte v. THinc Consulting Group Int'l*, 659 F.2d 817 (7th Cir.1981). There the Court dismissed, as not final, the appeal of a lower court ruling that ordered a stay pending arbitration in a case in which the complaint sought only "to enjoin ... arbitration proceedings and for a declaratory judgment that [an] employment agreement was void and unenforceable." *Id.* at 818. *Whyte* was relied upon in *Perera*, which we, in turn, relied on in *Humphrey*. *See Humphrey*, 4 F.3d at 318; *Perera*, 951 F.2d at 784–85; *see also Great American Trading Corp. v. I.C.P. Cocoa, Inc.*, 629 F.2d 1282, 1286 (7th Cir. 1980) (observing that Court in prior unreported opinion had dismissed an "interlocutory" appeal from arbitration order issued during pendency of declaratory judgment action).

*Corion* and *Whyte* are, in all relevant respects, similar to the case at hand. Moreover, there seems to be no reason for fashioning an exception to the rule stated in *Humphrey*, for cases like the one now before us, in which the only substantive claims are requests for declaratory relief. American, by seeking declarations that its surety contract was null and void, that its actions had not been taken in bad faith, and as to what its obligations were under the bonds, did not, as it now argues, solely seek a ruling as to the arbitrability of the dispute. In fact, it sought relief separate and apart from the " 'arbitration order [that] in no way resolve[d] the merits of the claims sent to arbitration....' " *Humphrey, supra*, 4 F.3d at 318 (quoting *Perera*, 951 F.2d at 786). The arbitration issue was, therefore, "embedded" in an action asserting other claims. Moreover, that issue was embedded because American's action sought "some relief other than an order requiring or prohibiting arbitration (typically some relief concerning the merits of the allegedly arbitrable dispute)." *Filanto*, 984 F.2d at 60, *quoted in Gammaro*, 15 F.3d at 95.

█ The district court found that it was "satisfied that all of the claim[s] between L–J and American Casualty are referable to arbitration" and so ordered that the parties begin arbitration and stayed the litigation. Because arbitration was not the sole issue before the court, the order compelling arbitration was interlocutory even though "the practical effect of the district court's actions was to render a final resolution to all issues before it." *Humphrey*, 4 F.3d at 317.

Dismissal of this appeal is particularly appropriate because the lower court clearly intended to retain its jurisdiction over the matter when it ordered the case "statistically stayed pending the outcome of arbitration between the parties." Its order merely rendered the case inactive until after the arbitration had resulted in an award at which time it could then enter a final judgment with respect to the very allegations raised by American in its first and last counts. *See Corion*, 964 F.2d at 56–58. An order compelling arbitration "in no way resolves the merits of the claims sent to arbitration"; rather, such an order is similar to the "hundreds of case-management orders in a large piece of litigation, any of which may affect the outcome, and almost none of which is appealable." *Humphrey*, 4 F.3d at 318 (quoting *Perera*, 951 F.2d at 786, quoting, in turn, *In re Chicago, M. St. P. & Pac. R.R.*, 784 F.2d 831, 833 (7th Cir.1986)). Because a district court has review powers over the arbitral award, any assertedly erroneous actions by the district court (including the order compelling arbitration) are reviewable on appeal after the arbitration process has been completed. *Humphrey*, 4 F.3d at 319.

### III.

The lower court's order does not constitute "a final decision with respect to an arbitration" because the arbitration claims were embedded in an action asserting other claims. We, therefore, lack jurisdiction to consider the questions presented in American's appeal. Thus, the appeal is

*DISMISSED.*