**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

ANDREA PELLERIN, a/k/a Andrea
Pelerin Knapp,
Plaintiff-Appellee,

v.

LIFE INSURANCE COMPANY OF NORTH

No. 98-2528

AMERICA,
Defendant-Appellant,

and

CIGNA INSURANCE COMPANY,
Defendant.

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
James R. Spencer, District Judge.
(CA-98-480)

Argued: April 9, 1999

Decided: July 19, 1999

Before LUTTIG and WILLIAMS, Circuit Judges, and
BUTZNER, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Robert Charles Drake, LIFE INSURANCE COMPANY
OF NORTH AMERICA, Philadelphia, Pennsylvania, for Appellant.

Colleen Marea Quinn, CANTOR, ARKEMA & EDMONDS, P.C., Richmond, Virginia, for Appellee. **ON BRIEF:** Eric Anthony Welter, HUNTON & WILLIAMS, McLean, Virginia, for Appellant.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Life Insurance Company of North America (LINA) seeks review of an order entered by the United States District Court for the Eastern District of Virginia. The district court denied LINA's motion to compel arbitration and to dismiss or stay the judicial proceedings. On appeal, LINA requests that the district court's order be vacated and remanded. We affirm.

I

This dispute arises out of a complaint alleging discrimination in violation of Title VII filed by Andrea Pellerin against LINA. Pellerin was employed by CIGNA as a sales representative for the CIGNA Group Insurance Division, which consists of all CIGNA affiliated companies such as LINA, from December 12, 1994, until she resigned on November 20, 1997. During her employment Pellerin worked in several territories including the Norfolk/Virginia Beach, Virginia, territory and the Raleigh/Durham, North Carolina, territory.

When Pellerin commenced her employment with LINA, she did not sign an arbitration agreement. From the start of her employment with LINA, Pellerin felt that she was being sexually harassed and treated differently than male counterparts. But, she did not file a formal complaint until her supervisor, David Harris, hired a male from outside of LINA to take a position he had previously given to Pellerin. Pellerin scheduled a meeting for November 6, 1997, after she

2

filed the complaint with human resources. Grace Gavigan, LINA's human resources consultant, met with Pellerin to discuss her complaint. The parties dispute whether the arbitration policy was discussed. Gavigan listened to Pellerin's complaints and told her how the investigation would proceed. Gavigan claims that as a result of this meeting she sent Pellerin a copy of the arbitration policy, rules, and procedures via overnight delivery to her home. Pellerin denied receiving this package.

As suggested by Gavigan, Pellerin met with David Staley on November 10, 1997. Again, the parties disagree as to whether the arbitration policy was discussed at this meeting. Pellerin met with Staley a second time on November 20, 1997. At this meeting Staley gave Pellerin a memorandum dated November 18, 1997, which summarized his investigation regarding her concerns. The memo does make reference to arbitration; however, it merely advises her that arbitration is an alternative means to resolve her complaint.

On November 20, 1997, Pellerin spoke with Gavigan after her meeting with Staley. She learned that the director of human resources had instructed Gavigan to remain removed from the investigation. Pellerin unsuccessfully tried to reach Gavigan later that day and left her a message. Pellerin then resigned from her position. The next day Pellerin received a letter from Gavigan, apologizing for missing her call but making no mention of arbitration.

On November 14, 1997, Pellerin filed a charge of discrimination with the Virginia Human Rights Council. The council arranged a voluntary mediation between the parties, which was scheduled for April 7, 1998. Pellerin and her attorney were present while Mellon and Robert Drake (attorney for LINA) participated by phone; at no time during the mediation was LINA's policy mentioned. The parties were notified by letters dated April 8, 1998, that the case would be transferred to a compliance officer for investigation because the mediation had been unsuccessful. Mention of LINA's arbitration policy did not appear in the position statement that Drake submitted to the Council on Human Rights. Pellerin's counsel requested her right to sue letter for the VHRC/EEOC on June 11, 1998, and Drake was notified by letter dated July 6, 1998, that the case was closed and Pellerin's right to sue letter had been issued.

On July 30, 1998, Pellerin filed a complaint against CIGNA Insurance Company with the district court. On August 14, 1998, she filed an amended complaint against LINA. The district court entered an order on September 1, 1998, noting that LINA was the sole named defendant and that CIGNA was no longer a party in the case. LINA filed a motion to compel arbitration and to dismiss or stay judicial proceedings pursuant to the Federal Arbitration Act. On October 8, 1998, after Pellerin had responded and LINA had replied, the district court heard argument on the motion.

At the hearing LINA requested that a full evidentiary hearing be held should the court find issues of fact as to whether there was an enforceable agreement to arbitrate. The district court dismissed the motion and denied LINA's request for an evidentiary hearing. The district court stated from the bench that although arbitration is usually favored, there must be evidence of an agreement. In this case, the district court found no evidence of an agreement. It explained that "[w]aiver of Title VII must be clear, and post-dispute notification is questionable." The court determined that the employer should bear the burden of the uncertainty. This appeal follows.

II

We have jurisdiction over this interlocutory appeal from an order of the district court denying a motion to compel arbitration and to stay proceedings pending that procedure pursuant to 9 U.S.C. § 16 and 28 U.S.C. § 1292(a). American Cas. Co. v. L-J, Inc., 35 F.3d 133, 135 (4th Cir. 1994). We review the district court's denial of the motion de novo. Johnson v. Circuit City Stores, 148 F.3d 373, 377 (4th Cir. 1998).

In Johnson, this court stated that in order to determine whether a party has agreed to arbitrate the dispute should be decided as a matter of contract. See Johnson, 148 F.3d at 377. The court "should apply `ordinary state-law principles that govern the formation of contracts.'" Id. (citation omitted). The statute is clear. Section 3 of the Federal Arbitration Act requires "an agreement in writing" for arbitration to proceed. 9 U.S.C. § 3. "[A]rbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration." AT&T Technologies, Inc. v. Commu-

4

nication Workers of Am., 475 U.S. 643, 648-49 (1986) (citation omitted).

However, in the present case there is no evidence of an agreement. LINA claims that a copy of the arbitration policy was mailed to Pellerin, but this was after she filed her formal complaint. There is no signed agreement and no signed acknowledgment of the policy; there is no evidence that Pellerin was aware of the arbitration policy before she filed her complaint against LINA.

We recognize that the Supreme Court advises that"questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26 (1991) (citation omitted). Nevertheless, as the district court found, there was simply no evidence of any agreement to arbitrate between the parties.

AFFIRMED

5